[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2002
THOMAS K. KAHN
CLERK

No. 00-13729

D. C. Docket No. 00-08402 CV-KLR

MIRTA ROSA VALENZUELA,
FREDERICK KIRK REPPER,

Petitioners-Appellants,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeals from the United States District Court
for the Southern District of Florida

**(March 25, 2002)**

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI*, Judge.

* Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

TJOFLAT, Circuit Judge:

Petitioners in this case, Mirta Rosa Valenzuela ("Valenzuela") and Frederick Kirk Repper ("Repper"), are American citizens sought for prosecution by Italy for their alleged roles in an international drug smuggling ring. A magistrate judge certified their extradition to Italy and the district court denied their petition for a writ of habeas corpus. They now appeal.

We conclude that the magistrate judge erred in admitting into evidence an affidavit containing statements petitioners made in exchange for a promise of confidentiality made by agents of the Drug Enforcement Administration ("DEA"). Because the affidavit was indispensable to the finding of probable cause necessary to extradite petitioners, we reverse the district court's judgment and direct that the writ of habeas corpus issue.

I.

On September 27, 1997, Theresa Bailey ("Bailey"), a United States citizen, was arrested by Italian police in Padua, Italy, who discovered 3.2 kilograms of cocaine in her possession. She agreed to cooperate with the police, and informed them that in April, 1997 she was recruited as a drug courier by two individuals in Lantana, Florida, who were later identified as petitioners Valenzuela and Repper. Bailey claimed that Valenzuela and Repper offered her "a good reward" for her services, and put her in touch with Nwangu Ernst ("Ernst"), a Nigerian citizen,

2

who directed her to make two trips from Sao Paolo, Brazil to Padua to deliver drugs in August and September, 1997. She also stated that Valenzuela and Repper admitted having made similar trips for Ernst in the past, and provided her with the names of hotels in Padua where they had stayed. Acting on this information, Italian police confirmed that Repper and Valenzuela had stayed at these hotels in December 1994, November 1996, and January 1997. On February 16, 1998, an Italian judge in Padua issued warrants for the arrest of Repper and Valenzuela for importing and conspiracy to import 3.2 kilograms of cocaine into Italy in violation of articles 73 and 80 of Presidential Decree 309/90, punishable by imprisonment of more than one year.[1]

Meanwhile, beginning in early December, 1997, Valenzuela and Repper initiated meetings with Palm Beach County Deputy Sheriff Pat Tenety ("Tenety") and DEA Agents Dan Bruce ("Bruce") and Ed Duffy ("Duffy") to provide them with information about the multinational drug smuggling activities in which they had been involved. During these meetings, Valenzuela and Repper discussed their roles as couriers and recruiters for the drug smuggling ring. The agents told

---

[1] This constitutes an extraditable offense under Article II of the extradition treaty between the United States and Italy [hereinafter the "Treaty"]. See Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Italy, Oct. 13, 1983, U.S.-Italy, 35 U.S.T. 3023, art. II.

3

Repper and Valenzuela that they had not committed any crime for which they could be prosecuted in the United States and gave both Repper and Valenzuela use and transactional immunity for their statements.

On December 23, 1997, Repper signed a DEA Cooperating Individual Agreement (the "Agreement"), agreeing to gather and provide information to the DEA and testify to that information if necessary. In return, the Agreement guaranteed that the DEA would "use all lawful means to protect [Repper's] confidentiality." Repper subsequently signed three other documents establishing him as a paid informant for the DEA. Valenzuela did not sign any of these documents and was never documented by the DEA as a confidential informant. However, the government concedes that "Valenzuela took actions on behalf of DEA under the same terms as Repper," and that "both [petitioners] became confidential informants." In May of 1998, the agents informed Repper and Valenzuela that they were terminating the informant relationship because they had contacted members of the drug smuggling ring without the agents' permission, and had otherwise failed to cooperate with the DEA.

II.

A.

On July 29, 1998, Italy submitted its request for the extradition of

Valenzuela and Repper, along with the supporting documents required under the

Treaty, to the United States Embassy in Rome.  A counselor at the Embassy

certified these documents, as required under Article X of the Treaty and 18 U.S.C.

§ 3190, on August 12, 1998.  The request for extradition, supporting documents,

certification, and a copy of the extradition treaty were then forwarded by the

United States Department of State to the Department of Justice.  On July 16, 1999,

the United States Attorney for the Southern District of Florida filed complaints for

the provisional arrests of Valenzuela and Repper in aid of extradition to Italy in the

district court.[2]  A magistrate judge issued arrest warrants for Valenzuela and

---

[2]  The Treaty provides for the provisional arrest, "in case of urgency," of
persons charged or convicted of an extraditable offense upon an application by the
requesting state which contains:

> a description of the person sought . . . ; the probable location of that person;
> a brief statement of the facts of the case . . . ; a statement of the existence of
> a warrant of arrest . . . ; a description of the type of offenses, a citation to the
> sections of law violated and the maximum penalty possible upon conviction,
> or a statement of the existence of a judgment of conviction against that
> person . . . ; and a statement that a formal request for extradition of the
> person sought will follow.

Extradition Treaty, supra note 2, art. XII, 35 U.S.T. at 3023.
Once a provisional arrest has been made under the Treaty, the requesting
state, in this case Italy, must make a formal request for extradition under Article X
of the Treaty, which must include supporting documents, within 45 days.  See id.
If such a request is not timely submitted, the provisional arrest is terminated.  See
id.
A formal request for the extradition of persons who, like petitioners, have

Repper based on those complaints, and petitioners were arrested on July 30, 1999, in Palm Beach County, Florida.

The magistrate judge held a hearing on August 18, 1999, as required under 18 U.S.C. § 3184, to determine whether the evidence established probable cause sufficient to sustain their extradition under the requirements of the Treaty.[3] Pending her decision, the United States Attorney attempted to supplement this evidence by filing under seal the affidavit of DEA Agent Bruce (hereinafter "Bruce Affidavit"), which contained incriminating statements petitioners had made to him and Duffy regarding their involvement in drug smuggling activities in Italy. The magistrate judge refused to consider the Bruce Affidavit, however, because the "reports had not come to the court through proper Italian channels required by

---

yet to be convicted by the requesting country of any crime, must be accompanied by three items in addition to those required for a provisional arrest: (1) a certified copy of the arrest warrant; (2) "a summary of the facts of the case, of the relevant evidence and of the conclusions reached, providing a reasonable basis to believe that the person sought committed the offense for which extradition is requested"; and (3) documents establishing that the person sought is the person identified by the arrest warrant. See id. at art. X.

[3] 18 U.S.C. §§ 3181-96 govern the limited role of the courts in extradition proceedings. Specifically, § 3184 instructs an extradition judge to conduct a hearing to determine whether there is "evidence sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 1384. If the evidence is sufficient, the judge certifies the extraditability of the individual in custody to the Secretary of State. Id.

6

treaty,"[4] and because petitioners, citing the transactional and use immunity the DEA agents had given them and their Fifth Amendment privilege against self-incrimination, objected to her consideration of the statements contained in the affidavit.[5] Relying on the remaining, properly submitted evidence, the magistrate judge determined that there was a lack of probable cause to extradite petitioners, and thus dismissed Italy's extradition request on November 29, 1999.

That same day, however, the United States Attorney filed a second complaint seeking new provisional arrest warrants for petitioners. Along with this complaint, and in addition to the evidence produced during the first extradition hearing, he resubmitted, through proper Italian channels, the Bruce Affidavit.[6] The

---

[4] Article X of the Treaty requires that documents accompanying an extradition request from Italy are "signed by a judge or other Italian judicial authority and are certified by the principal diplomatic or consular officer of the United States in Italy." See Extradition Treaty, supra note 2, art. X, 35 U.S.T. at 3023.

[5] Petitioners cited the Fifth Amendment's Self-Incrimination Clause as an alternative basis for barring admission of the Bruce Affidavit. That is, if the magistrate judge should find that their statements to the DEA agents were not given under a grant of immunity, then the statements were compelled in violation of the Self-Incrimination Clause.

[6] Although the Bruce Affidavit was submitted only in English, the complaint pledged to have the Italian translation filed with the court, as required under Article X of the Treaty, within the Treaty time limit of 45 days. See Extradition Treaty, supra note 2, art. X, art. XII, 35 U.S.T. at 3023. This translation was timely filed on January 11, 2000, and the Bruce Affidavit was properly admitted under the guidelines for admissibility of documents in support of extradition under Article X of the Treaty.

magistrate judge immediately issued the new warrants, and Repper and Valenzuela remained in custody. After several continuances, a second extradition hearing was held on March 8 and 13, 2000. The purpose of the hearing was again to determine whether probable cause existed to extradite Valenzuela and Repper for the crimes alleged in the Italian arrest warrants. That determination turned on the admissibility of the Bruce Affidavit.[7] Petitioners reasserted their objections to the court's consideration of the affidavit. In addition, petitioners contended that the Fifth Amendment's Due Process Clause precluded the court's use of the affidavit because the Agreement required the DEA to "use all lawful means to protect [their] confidentiality."

On May 10, 2000, the magistrate judge concluded that the Bruce Affidavit was admissible and entered an order certifying the extraditability of Valenzuela and Repper.[8] Although the she found that petitioners had indeed been given transactional and use immunity, which would bar the United States from prosecuting them for their involvement in the drug smuggling operation, the

---

[7] In addition to the Bruce Affidavit, the record before the magistrate judge included all of the evidence presented at the August 18, 1999 hearing.

[8] The magistrate judge treated the inculpatory statements contained in the Bruce Affidavit "as a supplement to probable cause," and thereby determined that "probable cause exist[ed] to believe that both Valenzuela and Repper committed the crimes with which they [were] charged by the Italian authorities."

8

magistrate judge rejected their argument that such immunity protected them from

prosecution, or the use of their statements to the agents, by Italy.  In so holding, the

magistrate judge considered, and rejected out of hand, petitioners' argument that

the Italian and American authorities were cooperating to such an extent that the

Italian prosecution should be treated as a prosecution initiated by the United States.

Turning to petitioners' argument that their Fifth Amendment  privilege

against self-incrimination precluded her from considering such statements,[9] the

magistrate judge concluded that the statements, though "not compelled by statute

nor by formal agreement . . . [were nevertheless]  subject to the protection of the

Fifth Amendment."  After reaching this conclusion, the magistrate judge went on

to say that "since the[] statements cannot be used against [petitioners] in a criminal

prosecution in the United States, there is no Fifth Amendment bar to the admission

of those statements at the extradition hearing."   "The protections inuring to

[petitioners] by virtue of the hip pocket immunity conferred by DEA agents in the

---

[9]  This was an alternative argument: if the court held that the grants of
transactional and use immunity did not protect petitioners from prosecution in
Italy, the Fifth Amendment's Self-Incrimination Clause barred the use of their
statements at the extradition hearing.

9

U.S. are co-extensive with the protection of the Fifth Amendment."[10]  In sum,

neither the grant of transactional and use immunity nor the Fifth Amendment's

Self-Incrimination Clause barred the magistrate judge from considering the Bruce

Affidavit.  The magistrate judge's order did not address petitioners' due process

argument based on the Agreement  – that the DEA's promise to protect petitioners'

confidentiality precluded the United States Attorney from using the Bruce

Affidavit to establish probable cause.

B.

After the magistrate judge certified their extradition, petitioners repaired to

the district court, filing a joint petition for a writ of habeas corpus.[11]  Their petition

was based on the objections they had made to the magistrate judge's entertainment

of the Bruce Affidavit, to-wit: (1) the grant of transactional and use immunity

rendered inadmissible the statements attributed to them in the affidavit; (2)

---

[10]  In other words, the magistrate judge concluded that, were it not for the grant of immunity, the Fifth Amendment's Self-Incrimination Clause would have barred the admissibility of the incriminating statements contained in the Bruce Affidavit notwithstanding the fact that such statements had not been compelled. The magistrate judge cited no authority for the proposition that the Clause protects a person from the government's use of statements the person has made freely and voluntarily.

[11]  There is no direct appeal from extradition decisions.  Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 827 n.3 (11th Cir. 1993).

alternatively, the Self-Incrimination Clause precluded the United States Attorney's use of the statements to establish probable cause; and (3) by using the statements, the United States Attorney breached the Agreement DEA agents had made with petitioners and thereby denied petitioners of due process of law.

The district court treated the petition as having raised the first two points set out above but not the third point, and, relying on the record established before the magistrate judge, denied the writ. Addressing the first point, the court held that the immunity granted by the DEA agents applied solely to prosecutions in the United States; that is, it had no extraterritorial application. The court disposed of the second point in the same fashion; the Self-Incrimination Clause did not apply extraterritorially. Petitioners now appeal the district court's decision, contending that, for the reasons they presented to the district court, the magistrate judge was precluded from using the statements contained in the Bruce Affidavit to determine whether the extradition application established probable cause that petitioners committed the criminal acts described in the Italian arrest warrant.

III.

Habeas corpus review of a magistrate judge's decision regarding extradition is limited to deciding "whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and, by a somewhat liberal extension, whether there

11

was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 828 (11th Cir. 1993) (citation omitted). On review of a denial of a habeas petition, we review findings of fact for clear error. See King v. Moore, 196 F.3d 1327, 1330 (11th Cir. 1999). Mixed questions of law and fact are reviewed de novo. See id. Despite our limited role in extradition proceedings, the judiciary must ensure that the constitutional rights of individuals subject to extradition are observed. We turn therefore to consider petitioners' claims of error.

First, the magistrate judge's finding of fact, which the district court accepted as not clearly erroneous, that the DEA agents never promised petitioners immunity from Italian prosecution in exchange for their cooperation, has solid support in the record. The agents gave petitioners transactional and use immunity, but it only applied to criminal proceedings occurring in the United States.

Second, the Supreme Court's decision in United States v. Balsys forecloses petitioners' argument that the Self-Incrimination Clause has extraterritorial application. United States v. Balsys, 524 U.S. 666, 672, 118 S. Ct. 2218, 2222, 141 L. Ed. 2d 575 (1998). Thus, even if the statements of petitioners contained in the Bruce Affidavit were compelled, the Clause would not bar their use in the extradition hearing. See id.; United States v. Gecas, 120 F. 3d 1419, 1430 (11th

12

Cir. 1997). We also agree with the magistrate judge and the district court that there is simply nothing in the record to support a finding that the investigation by Italy was so jointly and cooperatively conducted with the United States as to allow petitioners to take advantage of dicta in Balsys that may allow individuals to claim that "fear of foreign prosecution [is] tantamount to fear of a criminal case brought by the Government itself." Balsys, 524 U.S. at 698-99, 118 S. Ct. at 2235.

We turn now to consider petitioners' third claim -- that the United States Attorney's use of the Bruce Affidavit to establish probable cause breached the DEA agents' promise to "use all lawful means to protect [petitioners'] confidentiality." The substance of this promise (contained in the Agreement) was that Repper and Valenzuela would provide the agents with information in exchange for DEA's promise that it would use its "best efforts" to protect their identity. Despite this promise, Agent Bruce disclosed both petitioners' identities and their incriminating statements to Italian authorities when it became apparent that the Italian government had supplied insufficient proof to establish probable cause linking petitioners to the crimes charged in the Italian arrest warrant.[12] It is

_____

[12] In defense, the government claims that the Affidavit was only submitted after petitioners themselves disclosed their status as confidential informants, rendering the government's actions harmless. We dismiss this argument first because any such disclosure is not reflected on the record before us, and second because the government admits that the petitioners only disclosed their status to the

13

therefore plain that the United States Attorney's submission of the Bruce Affidavit operated to breach the Agreement petitioners had made with the agents.[13]   Such breach, petitioners submit, rendered the extradition hearing fundamentally unfair and denied them due process of law.

Petitioners rely on our en banc decision in United States v. Harvey, which holds that "[d]ue process requires the government to adhere to the terms of any plea bargain or immunity agreement it makes." United States v. Harvey, 869 F.2d 1439, 1443-44 (11th Cir. 1989) (en banc).  Harvey, in turn, relies on Santobello v. New York, in which the Supreme Court held that a defendant may challenge his sentence under the Due Process Clause if he can show that the prosecutor's breach of the plea agreement renders the defendant's plea fundamentally unfair.  See Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971).

In this case, petitioners were aware that they had committed crimes in Italy

---

judge as a defense to the admission of the Bruce Affidavit.

[13]   The dissent claims that "by keeping the petitioners' identities confidential while Italy was requesting their extradition, the DEA agents fulfilled their obligation to protect the petitioners' confidentiality to 'the best of their ability.'"  To accept this notion would be to conclude either that the confidentiality agreement somehow expired upon Italy's filing of its request for extradition in this case or that once Italy had filed this request, it was beyond the "best abilities" of the agents to keep the petitioners' identities confidential.  We can accept neither.

14

for which they could be prosecuted. They conditioned their cooperation with the DEA, in part, on the agents' promise of confidentiality. They no doubt would have refused to provide the agents with the inculpatory information regarding the drug transactions if the agents had told them that the  information they provided, along with their identities, might be disclosed to the Italian authorities and might result in their extradition to Italy for trial. In this case, the Government not only ignored the agents' promise – by revealing petitioners' identity and the information they provided to the Italian authorities – but it went one step further: it used the fruits of the breach by presenting the information to the magistrate judge, all to petitioners' detriment. To affirm the district court's judgment would be to countenance the Government's conduct. We can no more do this than the Court could in Santobello.

The magistrate judge explicitly concluded that without the Bruce Affidavit, the evidence presented was insufficient to sustain the extradition of Valenzuela and Repper under the Treaty and 18 U.S.C. § 3184. Having concluded that this evidence was admitted contrary to petitioners' due process right to a fundamentally fair hearing, we have no choice but to reverse the district court's judgment and to direct the court to grant petitioners' application for a writ of habeas corpus.

SO ORDERED.

WILSON, Circuit Judge, dissenting:

The petitioners, Valenzuela and Repper argue that the use of a DEA affidavit as evidence to support a finding of probable cause during the extradition proceeding violates their Fifth Amendment right against self-incrimination, as well as their due process rights. The majority holds that the DEA affidavit does not violate the petitioners' Fifth Amendment right, but that the affidavit violates their due process right to a fundamentally fair hearing. I agree with the former holding, but not the latter. After reviewing the record and the testimony of DEA Agents Bruce and Duffy, Detective Tenety, and the petitioners to determine exactly what the immunity/cooperation agreement between the DEA and the petitioners entailed, I find no breach of the agreement, and thus, no due process violation. Therefore, I must respectfully dissent.

As we have held, the government must adhere to the terms of any plea bargain or immunity agreement that it makes in order to satisfy a defendant's due process rights. *United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989). The due process requirements surrounding immunity and cooperation agreements also apply during extradition proceedings. *In re Extradition of Burt*, 737 F.2d 1477, 1484 (7th Cir. 1984). If the government breaches an immunity/cooperation agreement and violates the petitioner's due process rights, courts have "sufficient

17

reason to grant habeas relief in the face of a request for extradition." *In re Extradition of Drayer*, 190 F.3d 410, 412 (6th Cir. 1999). We must therefore determine whether the United States breached its immunity/cooperation agreement with Repper and Valenzuela in order to determine whether their due process rights were violated.

The immunity/cooperation agreement in this case is comprised of both written and oral promises made by DEA Agent Bruce and Detective Tenety.[1] Repper apparently signed three DEA forms, the most important being the DEA Cooperating Individual Agreement, DEA Form-473, dated December 23, 1997, which reads as follows:[2]

---

[1] We must rely on the DEA agents', the petitioners', and the detective's testimony to determine what was promised under the alleged immunity/cooperation agreement. Informal grants of immunity are difficult to piece together. As we stated in *Harvey*, 869 F.2d at 1443:

> [T]he magistrate and district court have been put through the arduous task of reconstructing the terms of the agreement with the government, a task made still more difficult by the astonishing failure of the DEA agents who interviewed [the petitioner] to keep any written records of those interviews. Informal grants of immunity are by their very nature less certain than formal grants, and thus are much more likely to create confusion for the government and for the courts in the future. As long as prosecutors continue the practice of unwritten grants of immunity, they open the door for subsequent litigation such as this, and for adverse decisions as well.

[2] According to Agent Bruce, although Valenzuela did not sign the agreement, the protections that were given to Repper were extended to her as well.

The undersigned cooperating individual agrees to the following: I will not violate criminal laws in furtherance of gathering information or providing services to DEA, and any evidence of such a violation will be reported by DEA to the appropriate law enforcement agency. I have no official status, complied or otherwise, as agent or employee of DEA. That the information I provide may be used in a criminal proceeding, and I may be called upon to testify to such information in a court of law. And although DEA will use all lawful means to protect my confidentiality, this can not be guaranteed.

I am advised that this is a federal offense to threaten, harass or mislead anyone who provides information about a federal crime to a federal law enforcement agency. If I experience anything of this nature as a result of my cooperation with DEA I will contact my controlling agent immediately. I have read and understand the following regarding my conduct as a DEA cooperating individual. Signature.[3]

Repper also signed a payment for information/purchase of evidence form, which provided him with subsequent payments for his services.

None of the DEA forms Repper signed appear to grant Repper or Valenzuela any immunity from future prosecution by the United States. However, at the extradition hearing, both the DEA agents and the petitioners testified that a verbal agreement was made that the petitioners would be free from any United States prosecution if they provided the DEA with information regarding an international drug smuggling operation. Agent Bruce testified that during a meeting on December 17, 1997, "[w]e basically told them that it is apparent you have

---

[3] DEA Form-473 is not found in the record; therefore, we must rely on Agent Bruce's reading of the form at the extradition hearing.

committed crimes in other countries. Again, you have to understand that we cannot protect you from these crimes that you may have committed in these countries. We cannot give you immunity of any kind."

On cross-examination, Agent Bruce testified that he and Detective Tenety told the petitioners on December 17th that they were not going to prosecute them in the United States – "We told them that we as DEA were not interested in prosecuting them in the United States. But we did tell them that they had to understand that based on what you have told us you have obviously committed crimes in other countries, and because of this we can't protect you in any way from being arrested for these crimes."

As to the government's promise of confidentiality, the DEA Form-473 indicated that the agents were to use "all lawful means" to keep their identities confidential; however, the form notes that "this can not be guaranteed." When asked what it meant when Valenzuela and Repper were told that their statements would be protected and kept confidential, DEA Agent Duffy explained that "[w]e protect the confidentiality of our sources to the best of our ability."

Based on the agents' and the petitioners' testimony, Valenzuela and Repper clearly received immunity from United States prosecution. It is also equally clear that they did not receive promises of immunity from Italian prosecution – nor were

they given assurances that they would be protected from the Italian authorities if the Italians wished to prosecute them in the future for crimes they had committed in Italy. The DEA could not protect them "in any way from being arrested for these crimes." Thus, the government did not breach any immunity/cooperation agreement because the petitioners are not being prosecuted in the United States for any crimes committed here.

In addition, Valenzuela and Repper contend that the government breached the agreement by not keeping their identities and information confidential. However, it was made clear that this confidentiality was not absolute – the written agreement specifically provides that confidentiality cannot be guaranteed.

Certainly the information Valenzuela and Repper provided the DEA was not meant to be confidential because according to DEA Form-473, this information could be "used in a criminal proceeding," and Valenzuela and/or Repper could "be called upon to testify to such information." As to protecting their identities as confidential informants, the DEA office in West Palm Beach repeatedly provided the DEA office in Rome with information provided by the petitioners, yet the agents never disclosed their identities. Moreover, the fact that the Italian authorities initially presented a formal request for extradition without including any incriminating information the DEA might have had clearly suggests that the

21

Italian authorities had no knowledge that the defendants were confidential informants of the DEA.[4] Thus, by keeping the petitioners' identities confidential while Italy was requesting their extradition, the DEA agents fulfilled their obligation to protect the petitioners' confidentiality to "the best of their ability."

In conclusion, Italy is requesting extradition of Valenzuela and Repper for crimes they committed in Italy *prior to* becoming informants for the DEA. No law enforcement officer in the United States ever told the petitioners that they would not be held accountable for crimes they had previously committed in Italy. In fact, the record demonstrates that: (1) the DEA made no promises as to extradition (to the contrary, the DEA agents stated they could not protect them "in any way"); (2) the DEA never granted the petitioners any immunity from Italian prosecution; (3) the DEA never promised that the information the petitioners provided them would remain confidential ( DEA Form-473 indicates that they may have to testify at a later date); and (4) the government only revealed the petitioners' identities after the Italian authorities formally requested their extraditions and arrest warrants were issued. The DEA's promise of confidentiality was not absolute; the petitioners

---

[4] In fact, according to the Government's Supplemental Response to Defendant Valenzuela's Motion to Deny Extradition Request, the government filed under seal DEA Agent Bruce's affidavit containing statements made by the petitioners to the DEA only *after* the petitioners themselves disclosed their status as confidential informants to the court.

were clearly aware that the DEA could not protect them from prosecution for crimes they had previously committed in Italy.  Therefore, I find that the government did not breach its immunity/cooperation agreement, and as a result, the petitioners' due process rights have not been violated.  I would therefore affirm the district court's order finding probable cause to extradite and deny the petitioners' application for a writ of habeas corpus.