[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 8, 2004
THOMAS K. KAHN
CLERK

No. 03-14119

D. C. Docket No. 03-60904-CV-ASG

JAROSLAVA LORIE KASTNEROVA,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,
John Ashcroft, U.S. Attorney General,
UNITED STATES SECRETARY OF STATE,
Colin Powell, Secretary,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 8, 2004)**

Before BLACK, BARKETT and STAHL[*], Circuit Judges.

BLACK, Circuit Judge:

_____

[*] Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

Appellant Jaroslava Lorie Kastnerova filed a petition for writ of habeas corpus contesting a magistrate judge's issuance of a certificate that permits Kastnerova's extradition to the Czech Republic. The district court denied the petition, concluding that (1) a valid extradition treaty exists between the Czech Republic and the United States, and (2) there was sufficient evidence warranting the magistrate's finding that reasonable grounds exist to believe Kastnerova guilty of the charges. Kastnerova now appeals both the substantive determinations of the district court and the narrow scope of the district court's habeas review of the magistrate's certification. We affirm the district court in all respects.

## I. BACKGROUND

A. *The Extradition Treaty*

Before detailing the events leading to this appeal, it is necessary to summarize briefly the relevant history surrounding the Treaty Concerning the Mutual Extradition of Fugitive Criminals, July 2, 1925, U.S.-Czech., 44 Stat. 2367 [hereinafter, the Treaty].[1] In the aftermath of World War I, Czechoslovakia was created from Bohemia, Moravia, and Slovakia, all subject territories of the former Austro-Hungarian Empire. Shortly thereafter, the Treaty was signed by

---

[1] A supplementary extradition treaty enlarging the list of extraditable offenses was signed in Washington on April 29, 1935, and entered into force on August 28, 1935. 49 Stat. 3253.

Czechoslovakia and the United States in Prague.  The Treaty was ratified by the

United States Senate on March 3, 1926.  Article 14 of the Treaty states:

> The present Treaty shall remain in force for a period of ten years and
> in case neither of the High Contracting Parties shall have given notice
> one year before the expiration of that period of its intention to
> terminate the Treaty, it shall continue in force until the expiration of
> one year from the date on which such notice of termination shall be
> given by either of the High Contracting Parties.

Neither country has ever given notice of its intention to terminate the Treaty.

Moreover, the Treaty continues to be included in the U.S. State Department's list

of treaties in force.  *See* Office of the Legal Advisor, U.S. Dep't of State, *Treaties*

*in Force* 72 (2003).

From its founding until its dissolution in 1993, Czechoslovakia had varied

types of governments, ranging from democratic to communist.  After the fall of

Communism in the early 1990s, the Czech lands (Bohemia and Moravia) and

Slovakia agreed to go their separate ways.  Thus, on January 1, 1993, in what was

called the "velvet divorce" (due to the amicable nature of the separation),

Czechoslovakia split to form the Czech Republic and the Republic of Slovakia.

The events leading to the extradition request at issue took place shortly after

the formation of the Czech Republic.  Kastnerova, then a citizen of the Czech

Republic, entered into several business ventures involving fitness equipment and dietary supplements. Kastnerova subsequently immigrated to the United States.

B. *Procedural History*

On June 29, 2000, Judge Vladimír Čech of the Regional Court of Brno in the Czech Republic issued an arrest warrant charging Kastnerova with three counts of fraud involving several million Czech koruny (CZK), in violation of § 250(1) & (4) of the Czech Criminal Code.[2]

The warrant alleges that, in late 1994, Kastnerova received an advance payment of 200,000 CZK from Libuše Barková, an agent of the Escade-Šeba company, for exercise equipment worth 458,730 CZK. The equipment was not delivered and the advance payment was not returned. The warrant further alleges

---

[2] The certified English translation of Section 250 provided in the arrest warrant reads:

Section 250
FRAUD

(1) A person who to the detriment of the property of another gains money or property for himself/herself or someone else by misleading (deceiving) another, making use of another's error or concealing substantial facts, and thus causes damage which is not negligible to the property of another, shall be punished by imprisonment for a term not exceeding two years, or by prohibition of his/her (business or professional) activities or by a pecuniary penalty or by forfeiture of a thing.

(4) The offender shall be punished by imprisonment for a term ranging from five up to twelve years if he or she, by the offence given in paragraph 1, causes damage of a significant extent.

4

that, on November 7, 1994, Kastnerova obtained a loan from the Chemitan company for 1,000,000 CZK for the purpose of buying fitness supplements to sell to the K-Mart company. Allegedly, this loan was secured by a pledge agreement bearing a false signature of Josef Hanus, an agent of K-Mart, Prague. Kastnerova did not repay the loan and did not deliver the goods to K-Mart. The warrant finally alleges that, in June 1995, Kastnerova failed to make a contractually required delivery of exercise equipment to Milan Beleščák after having received 1,003,376.80 CZK from Alfapro, a Czech leasing company that had financed Beleščák's purchase of the equipment.

On February 26, 2003, the United States government, acting on behalf of the government of the Czech Republic, filed a complaint for Kastnerova's extradition pursuant to 18 U.S.C. § 3184.[3] A magistrate judge issued a warrant for

---

[3] Section 3184 states:

Whenever there is a treaty or convention for extradition between the United States and any foreign government . . ., any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention . . ., issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . ., he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the

Kastnerova to be brought before the court and subsequently conducted an extradition hearing, at which time Kastnerova explained her version of the events leading to the criminal charges filed against her in the Czech Republic. In support of extradition, the Government presented several statements from witnesses in the Czech Republic, statements from Kastnerova, and documents memorializing the subject transactions. After considering the evidence, the magistrate judge issued a certification of extraditability and order of commitment, finding, *inter alia*, that a valid extradition treaty exists between the United States and the Czech Republic, the charges alleged in the complaint are extraditable offenses under the treaty, and probable cause exists to believe Kastnerova committed the offenses for which extradition was sought.

Shortly thereafter, Kastnerova filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241,[4] in which she argued: (1) no valid extradition treaty exists between the United States and the Czech Republic; and (2) the Government failed to demonstrate probable cause to believe that she had committed the

_____

stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184.

[4] There is no direct appeal in extradition proceedings. *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 827 n.3 (11th Cir. 1993).

charged offenses. The district court denied Kastnerova's petition by order entered on August 5, 2003, and this appeal followed.

## II. STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. On review of a denial of a habeas petition pertaining to the issuance of a certification of extraditability, we review factual findings for clear error and questions of law de novo. *See Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002).

## III. DISCUSSION

On appeal, Kastnerova raises three arguments. First, she asserts the scope of review set out in *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993), and applied by the district court was superceded by *INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271 (2001). Second, Kastnerova argues there is no valid extradition treaty between the United States and the Czech Republic. Finally, Kastnerova contends the district court erred in finding probable cause to believe she committed the offenses with which she is charged. We address each argument in turn.

A. *Scope of Review*

In *Martin*, this Court observed that a district court's review of a magistrate judge's issuance of a certificate of extraditability is narrow. Review of the

7

magistrate's order is limited "to determining 'whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" 993 F.2d at 828 (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S. Ct. 541, 542 (1925) (Holmes, J.)).[5]

Kastnerova contends that this formulation of the district court's scope of review has been superceded by the Supreme Court in *INS v. St. Cyr*. In that case, the Supreme Court stressed that, for habeas corpus relief to be limited in any way, there must—at a minimum—be clear congressional intent to do so. 533 U.S. at 299, 121 S. Ct. at 2278–79. In Kastnerova's view, the extradition statutes do not mention habeas review, *see* 18 U.S.C. §§ 3181–95, and, therefore, habeas review of the issuance of a certificate of extradition cannot be limited.

This argument fails for several reasons, most importantly because *St. Cyr* does not stand for Kastnerova's proposition. *St. Cyr* addressed the following procedural question: whether the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, and the Illegal Immigration Reform and

---

[5] The magistrate's role is also restricted. "The extradition magistrate conducts a hearing simply to determine whether there is 'evidence sufficient to sustain the charge [against the defendant] under the provisions of the proper treaty or convention.'" *Martin*, 993 F.2d at 828 (quoting 18 U.S.C. § 3184). Once the magistrate determines the evidence is sufficient, the magistrate "makes a finding of extraditability and certifies the case to the Secretary of State." *Id.*

Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009, affected the availability of habeas corpus jurisdiction under 28 U.S.C. § 2241.[6] 533 U.S. at 292, 121 S. Ct. at 2275. The government in *St. Cyr* argued that AEDPA and IIRIRA removed federal court jurisdiction over a challenge to the Attorney General's statutory construction of the 1996 acts. *Id.* at 297, 121 S. Ct. at 2278. The Court rejected this argument, noting that "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." *Id.* at 299, 121 S. Ct. at 2278–79. It is this discussion upon which Kastnerova bases her challenge.

The above-referenced passage, however, speaks to the district court's jurisdiction to hear a habeas petition, not to the district court's scope of review once it asserts jurisdiction over a petition. Indeed, "'it is the scope of inquiry on habeas corpus that differentiates' habeas review from 'judicial review.'" *Id*. at 312, 121 S. Ct. at 2285 (quoting *Heikkila v. Barber*, 345 U.S. 229, 236, 73 S. Ct. 603, 607 (1953)).

---

[6] *St. Cyr* also involved a substantive question regarding the retroactive effect of AEDPA and IIRIRA. 533 U.S. at 292, 121 S. Ct. at 2275. Kastnerova, however, does not rely on this portion of the opinion.

Additionally, the Supreme Court in *St. Cyr* favorably cited *Terlinden v. Ames*, 184 U.S. 270, 22 S. Ct. 484 (1902). In *Terlinden*, the Supreme Court recognized the limited scope of habeas review of extradition decisions and refused to expand it, noting that the extradition statute "gives no right of review to be exercised by any court or judicial officer, and what cannot be done directly cannot be done indirectly through the writ of habeas corpus." *Id.* at 298, 22 S. Ct. at 487. Thus, *St. Cyr* cannot be read to overrule *Terlinden*, *Martin*, or the limited scope of review set forth in these cases.

Finally, even after *St. Cyr*, this Court has continued to apply the narrow scope of review of magistrate judges' decisions regarding extradition set out in *Terlinden*. *See Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002).

Had the district court concluded it had no jurisdiction over Kastnerova's habeas petition, *St. Cyr* might be applicable. That is not, however, what occurred. Kastnerova disputes only the narrow scope of review applied by the district court, not its exercise of jurisdiction. *St. Cyr*, therefore, is inapposite.

The district court properly limited its review of the magistrate's certification to whether the magistrate judge had jurisdiction, whether the offense charged was within the treaty, and whether the Government presented competent evidence upon which the magistrate could find there were reasonable grounds upon which to

believe Kastnerova guilty of the charged offenses.[7] *Terlinden*, 184 U.S. at 278, 22 S. Ct. at 487; *Martin*, 993 F.2d at 828.

B. *Validity of the Extradition Treaty*

Kastnerova asserts that the Treaty was invalidated when Czechoslovakia split into the Czech Republic and Slovakia on January 1, 1993. She contends that the "unilateral action" by the Executive of recognizing the Treaty as still in place violates the constitutional mandate that two thirds of the United States Senate ratify any treaty between the United States and a foreign nation. In other words, Kastnerova argues that when Czechoslovakia split in 1993 to form the Czech Republic and Slovakia, the Treaty was rendered void because the U.S. Senate had ratified a treaty with Czechoslovakia, not the Czech Republic.

As this Court has previously noted, extradition is a function of the Executive, *Martin*, 993 F.2d at 829, and "the question whether power remains in a foreign state to carry out its treaty obligations is in its nature political and not judicial, and . . . the courts ought not . . . interfere with the conclusions of the political department in that regard." *Terlinden*, 184 U.S. at 288, 22 S. Ct. at 491. Indeed, every other Court of Appeals to consider whether a treaty has lapsed has

---

[7] In any case, we note it is clear from the record that the district court considered de novo the legal question of whether the extradition treaty continued to be valid, devoting several pages of analysis to the issue.

deferred to the Executive's determination. *See, e.g.*, *United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996); *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 954 F.2d 847, 852 (2d Cir. 1992); *Sabatier v. Dabrowski*, 586 F.2d 866, 868 (1st Cir. 1978).

Accordingly, "we begin our analysis by examining the conduct of the United States and [the Czech Republic] . . . to determine whether such conduct evinces an intent" that the nations continue to be bound by the extradition treaty. *Blake v. Am. Airlines, Inc.*, 245 F.3d 1213, 1216 (11th Cir. 2001). There is considerable evidence that the governments of both the Czech Republic and the United States consider the Treaty to be in effect. First, there was an exchange of diplomatic letters between the two nations regarding the Czech Republic's status as a successor state. President Bush sent a letter to the Prime Ministers of the Czech Republic and Slovakia on or about December 30, 1992, advising that the United States recognized both nations and acknowledged their commitment to fulfill the treaty and other obligations of the former Czechoslovakia. In response to this letter, Prime Minister Václav Klaus of the Czech Republic stated: "The Czech Republic is a successor state to the dissolved Czechoslovak federation and

is committed to fulfilling the treaty and other obligations of the Czech and Slovak Federal Republic."

It is also significant that the Czech Republic has previously sought extradition under the Treaty. *See, e.g.*, *In re Extradition of Platko*, 213 F. Supp. 2d 1229 (S.D. Cal. 2002). Such conduct demonstrates the Czech Republic's continued reliance on the Treaty. Although there is no evidence in the record concerning extraditions to the United States, the treaty is listed in the U.S. State Department's *Treaties In Force* publication. *See* Office of the Legal Advisor, U.S. Dep't of State, *Treaties in Force* 72 (2003).

Finally, the U.S. State Department asserted, through a declaration submitted to the magistrate, that "[i]t is the view of the Department of State that both treaties [the 1925 treaty and the 1935 supplementary treaty] remain in effect with the Czech Republic and the Slovak Republic, the two successor States to the former Czechoslovakia."

Given this conduct, the district court did not err in concluding that the Executives of both the Czech Republic and the United States recognize the treaty as valid. Although Kastnerova asserts that the significant geographic and legal differences between the Czech Republic and Czechoslovakia mandate termination of the treaty, "federal courts are not as well equipped as the Executive to

13

determine when the emergence of a new country brings changes that terminate old treaty obligations." *Then*, 92 F.3d at 854. Moreover, Kastnerova has not effectively countered the Government's conclusion that "there is a legal, geographical, and historical continuity" between Czechoslovakia and the Czech Republic. *Id.* The agreement of the Executives of both countries that the Treaty still is in effect weighs heavily in favor of the continuing validity of the Treaty. Accordingly, we decline to hold the Treaty invalid.[8]

C. *Probable Cause*

Kastnerova's contention that there was insufficient evidence to warrant the magistrate's finding of probable cause to believe her guilty of the charged offenses is meritless. Extradition hearings under § 3184 "are in the nature of a preliminary hearing." *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969).[9] Accordingly, the Government did "not have to show actual guilt, only probable cause that the fugitive is guilty. The magistrate does not inquire into the guilt or innocence of

---

[8] Additionally, this Court has held that "the question of just what constitutes a 'treaty' requiring Senate ratification presents a nonjusticiable political question." *Made In The USA Found. v. United States*, 242 F.3d 1300, 1302 (11th Cir. 2001). Thus, even were we to conclude that the determination of whether a successor nation can agree to continue a treaty in force was not a political question, it is by no means clear that Kastnerova's argument—that the agreement between the executives of the Czech Republic and the United States required Senate ratification—would succeed.

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

the accused; he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty." *Id.* (citations omitted). Upon reviewing the record, we conclude the district court did not err when it determined there was competent evidence to support the magistrate's finding that the Government met its burden to show probable cause for each of the charges alleged in the complaint. *See Terlinden*, 184 U.S. at 279–80, 22 S. Ct. at 488 (observing that "'the judgment of the magistrate rendered in good faith on legal evidence that the accused is guilty of the act charged . . . cannot be reviewed on the weight of evidence, and is final for the purposes of the preliminary examination unless palpably erroneous in law.'") (quoting *Ornelas v. Ruiz*, 161 U.S. 508, 509, 16 S. Ct. 689, 691–92 (1896)).

## IV. CONCLUSION

We hold that the scope of review of a certificate of extraditability set forth in *Terlinden* and *Martin* was not superceded by the Supreme Court's decision in *St. Cyr*. Additionally, because (1) precedent requires great weight be given to the conduct and determinations of the Executives of the signatory nations when addressing the continuation of treaties, and (2) the conduct of both the Czech Republic and the United States evinces an intent to continue to adhere to the Treaty, we hold the district court did not err in determining the Treaty to be valid.

15

Finally, we also hold the district court did not err when it found competent evidence to support the magistrate's probable cause determination. For these reasons, we affirm the district court's dismissal of Kastnerova's habeas petition.

AFFIRMED.