[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 26, 2005
THOMAS K. KAHN
CLERK

No. 04-13303

D. C. Docket No. 03-00610 CV-J-2 HTS

VALERIJ AFANASJEV,

Petitioner-Appellant,

versus

THOMAS D. HURLBURT, JR.,
United States Marshal,
CONDOLEEZZA RICE, Secretary
of State, United States of America,

Respondents-Appellees.

_____

No. 04-13309

_____

D. C. Docket No. 03-00605 CV-J-25-MCR

TATJANA AFANASJEVA,

Petitioner-Appellant,

versus

THOMAS D. HURLBURT, JR.,

United States Marshal,
CONDOLEEZZA RICE, Secretary
of State, United States of America,

Respondents-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

**(July 26, 2005)**

Before BLACK and HULL, Circuit Judges, and HODGES[*], District Judge.

BLACK, Circuit Judge:

The Republic of Lithuania has formally requested the extradition of

Appellants Tatjana Afanasjeva and Valerij Afanasjev, a married couple charged

with committing fraudulent business practices. After conducting a hearing

pursuant to 18 U.S.C. § 3184, a magistrate judge certified their extradition to

Lithuania on some, but not all, of the charges. In finding probable cause to

extradite, the magistrate judge relied primarily on an unsworn bill of indictment

prepared by a Lithuanian investigator. Appellants filed petitions for habeas

corpus, arguing the indictment was not competent evidence to establish probable

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of
Florida, sitting by designation.

cause.  The district court denied habeas relief, concluding there was sufficient

evidence to support the magistrate's determination that Appellants were

extraditable.  We affirm the district court.

## I.  BACKGROUND

A.    *Facts*

Tatjana Afanasjeva and her husband, Valerij Afanasjev, are Russian

nationals who operated a private business in Lithuania during the 1990s.  Over the

course of several years, the couple allegedly defrauded 81 individuals and

misappropriated approximately 1,442,006 in Lithuanian litas (LTL).  Appellants

were eventually charged with violating several provisions of the Criminal Code of

the Republic of Lithuania.  On May 19, 1999, an investigator in Lithuania issued a

bill of indictment summarizing the charges and the criminal investigation.

Most of the charges filed against Appellants relate to their alleged

involvement with a company named UAB "Gražna," which was established on

June 6, 1995.[1]  Valerij worked as an accountant for UAB "Gražna," and Tatjana

was the company's acting director.  From June 1995 until December 1997,

---

[1] The charges against Tatjana and Valerij are not identical.  Prior to the establishment of UAB "Gražna," Tatjana was the sole proprietor of a business providing commercial services in Lithuania.  Some of the charges filed against Tatjana concern her actions while running this individual enterprise from October 1993 until June 1995.

Appellants allegedly used their association with this company to fraudulently obtain the personal property of others. While acting as representatives of the company, Appellants borrowed money from private persons and agreed to repay the funds by a specific date. According to the bill of indictment, interest rates were not mentioned in the written agreements; however, to attract lenders, Appellants would verbally agree to pay interest on the borrowed money. As the contracts concluded, Appellants would deny that any interest was promised and assert their only obligation was to return the entrusted money in installments.

The indictment alleges that Appellants misled investors in other ways, as well. For example, Appellants allegedly informed potential lenders that the company's financial situation was strong, even though it was actually experiencing a financial crisis. In addition, several victims stated they were led to believe the invested money would be used to purchase real property. According to the indictment, Appellants often promised investors that their money would be used in such a manner, and UAB "Gražna" was advertised in the local newspaper, "Klaipėda," as a company engaged in the purchase and sale of real estate. Allegedly, Appellants assured lenders that their investments were secure, because the real property could, if necessary, be resold to satisfy the loans. However, despite these assurances, Appellants purportedly failed to use the funds as

promised.  The indictment alleges that Appellants purchased just two apartments in 1995 and only one in 1996.  Furthermore, during the course of the investigation, an employee at UAB "Gražna" stated the company rarely bought real property.

After acquiring the victims' money, Appellants allegedly used the funds for their own personal needs.  The indictment asserts lenders suffered significant losses because Appellants often failed to (1) repay loans by the agreed-upon date, (2) pay interest on the borrowed money, or (3) return any portion of the original loans.  Based on these actions, Appellants were charged with several counts of fraud, in violation of Article 274(2) and (3) of the Criminal Code of the Republic of Lithuania.[2]  Appellants were also charged with violating regulations regarding monetary transactions or transactions in securities, Article 329,[3] and with fraudulent bookkeeping, Article 323(2).

On February 5, 1998, Appellants signed written undertakings not to leave Lithuania pending the resolution of the criminal charges.  On June 10, 1999, the Lithuanian authorities referred Appellants for trial.  When Appellants failed to

---

[2] Tatjana was also charged under Article 151(2) and (3) for the acts of fraud that allegedly occurred prior to January 1, 1995.

[3] For those acts committed prior to January 1, 1995, the applicable statute for violations of rules regarding monetary transactions or transactions in securities is Article 87.

appear, the Lithuanian judge suspended the criminal proceedings until the couple could be located.

B.    *Procedural History*

On March 28, 2003, the United States, acting on behalf of the government of Lithuania, filed complaints in federal district court seeking the extradition of Appellants.[4]  A magistrate judge immediately issued arrest warrants for Tatjana and Valerij.  Appellants were arrested on April 3, 2003, in Ponte Vedra, Florida.

In accordance with 18 U.S.C. § 3184, the magistrate judge held a hearing to determine whether Appellants were extraditable.[5]  In support of extradition, the

---

[4] The applicable extradition treaty between the United States and Lithuania was signed on April 9, 1924, and entered into force on August 23, 1924.  A supplementary extradition treaty enlarged the list of extraditable offenses.  This supplementary treaty was signed on May 17, 1934, and entered into force on January 8, 1935.  We recognize that a new extradition treaty recently entered into force on March 31, 2003.  The new treaty, however, does not apply here because the United States filed the extradition complaints for Tatjana and Valerij before it went into effect.  *See* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Lithuania, Oct. 23, 2001, U.S.–Lithuania, S. Treaty Doc. No. 107-4, Art. 22 (entered into force Mar. 31, 2003).

[5] Section 3184 provides, in relevant part:
Whenever there is a treaty or convention for extradition between the United States and any foreign government . . ., any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention . . ., issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . ., he

Government submitted, *inter alia*, the following documents: (1) the bill of indictment; (2) an order from a Lithuanian judge, which summarizes the allegations and the procedural history of the case; and (3) a letter from the Prosecutor General of Lithuania, which describes the results of the investigation, restates the charges, and quotes the applicable provisions of the Lithuanian Criminal Code. The 106-page bill of indictment provides a detailed account of Appellants' alleged criminal activities. In the indictment, the Lithuanian investigator summarized statements made by victims, employees of UAB "Gražna," and other witnesses. The indictment, however, was not prepared under oath.

After reviewing the evidence, the magistrate judge issued certificates of extraditability, finding Appellants were extraditable on some, but not all, of the charges lodged against them in Lithuania. The magistrate judge concluded the fraud charges were the only extraditable offenses under the treaty. Moreover, the magistrate judge found that probable cause existed to believe Appellants

---

shall certify the same, together with a copy of all testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184.

committed the alleged fraudulent acts.[6]  In making the probable cause

determination, the magistrate judge relied exclusively on the bill of indictment.

Appellants collaterally challenged the magistrate judge's order by filing

petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  A petition for

writ of habeas corpus is a proper method to contest an extradition order because

there is no direct appeal in extradition proceedings.  *Kastnerova v. United States*,

365 F.3d 980, 984 n.4 (11th Cir. 2004) (citation omitted).  In the petitions,

Appellants argued the magistrate judge erred when he determined there was

probable cause to believe they were guilty of fraud.  The district court denied the

habeas petitions, finding there was competent evidence to support the magistrate's

probable cause determination.  Tatjana and Valerij appealed the district court's

denial of their habeas petitions to this Court.  We consolidated the two appeals.

## II.  STANDARD OF REVIEW

"On review of a denial of a habeas petition pertaining to the issuance of a

certification of extraditability, we review factual findings for clear error and

questions of law de novo."  *Id.* at 984 (citation omitted).

---

[6] To be specific, the magistrate judge found there was probable cause to extradite Appellants on *most* of the fraud charges.  The magistrate concluded there was insufficient support for two of the counts of fraud.  With regard to these two specific counts, the magistrate judge determined Appellants were not extraditable.

## III. DISCUSSION

This Court has repeatedly noted "that a district court's [habeas] review of a magistrate judge's issuance of a certificate of extraditability is narrow." *Id.*; *see also Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993); *Escobedo v. United States*, 623 F.2d 1098, 1101 (5th Cir. 1980).[7] As we have explained, a petition for writ of habeas corpus in an extradition case "is not a means for rehearing the magistrate's findings." *Escobedo*, 623 F.2d at 1101 (citing *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S. Ct. 541, 542 (1925)). Rather, "[r]eview of the magistrate's order is limited 'to determining [1] whether the magistrate had jurisdiction, [2] whether the offense charged is within the treaty, and [3] by a somewhat liberal extension, whether there was *any evidence* warranting the finding that there was reasonable ground to believe the accused guilty.'" *Kastnerova*, 365 F.3d at 984 (citing *Fernandez*, 268 U.S. at 312, 45 S. Ct. at 542) (emphasis added). In this case, Appellants have only challenged the magistrate's answer to the third inquiry.

Tatjana and Valerij argue the district court should have granted their habeas petitions because the magistrate judge issued the certificates of extraditability

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

based on inadequate evidence. They contend the Lithuanian bill of indictment, which the magistrate relied heavily upon, was not competent legal evidence to establish probable cause. Appellants assert the indictment lacks competency and reliability for the following reasons: (1) the document was not made under oath; (2) the witness and victim statements constituted hearsay because they were recounted by the investigator; (3) the statements were not sworn or signed by the witnesses and victims; and (4) it was unclear whether the indictment was based on the investigator's personal knowledge because he never explicitly stated that he was the individual who interviewed the witnesses and victims. Thus, the sole issue on appeal is whether the district court erred in determining there was competent evidence to support the magistrate judge's finding of probable cause.

After reviewing the record, we conclude the district court did not err when it refused to grant habeas relief. We reject Appellants' contention that the bill of indictment was insufficient evidence to justify their extradition. Federal law does not require all documents submitted for extradition purposes to be made under oath.[8] The admissibility of documents offered at an extradition hearing is governed by 18 U.S.C. § 3190, which provides:

---

[8] Similarly, the applicable extradition treaty between the United States and Lithuania does not impose an oath requirement.

10

Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190. In this case, the bill of indictment and the other Lithuanian documents were properly certified by Jonathan Floss, Vice Consul at the American Embassy in Lithuania.[9] The unsworn indictment, therefore, was admissible, and the magistrate judge was free to consider it in determining whether to certify Appellants' extradition. *See Escobedo*, 623 F.2d at 1103 (noting Mexican extradition documents were admissible because they were properly certified).[10]

In addition, this Court has observed that the evidence needed to extradite a fugitive differs from the evidence needed to convict a defendant at a criminal trial. We have explained:

Extradition hearings under § 3184 are in the nature of a preliminary hearing. Accordingly, the Government d[oes] not have to show actual guilt, only probable cause that the fugitive is guilty. The magistrate does not inquire into the guilt or innocence of the accused;

---

[9] At the time of the certification, Floss was the principal consular officer of the United States in Lithuania.

[10] We further note that while the indictment was not made under oath, it was signed by the investigator and approved by a Lithuanian prosecutor.

11

he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty.

*Kastnerova*, 365 F.3d at 987 (internal quotation marks and citations omitted).[11]

The Federal Rules of Evidence and the Federal Rules of Criminal Procedure are not applicable to extradition proceedings. Fed. R. Evid. 1101(d)(3); Fed. R. Crim. P. (1)(a)(5)(A). Moreover, we have expressly held that "[h]earsay . . . is permitted in extradition proceedings," *Escobedo*, 623 F.2d at 1102 n.10, and the Supreme Court has explained "unsworn statements of absent witnesses may be acted upon by the committing magistrate," *Collins v. Loisel*, 259 U.S. 309, 317, 42 S. Ct. 469, 472 (1922). *See also Elias v. Ramirez*, 215 U.S. 398, 409, 30 S. Ct. 131, 136 (1910) (holding unsworn statements were admissible and sufficient to justify the fugitive's extradition); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986)

---

[11] In their brief, Appellants argue an indictment "is not evidence," and therefore, the Government has failed to meet its evidentiary burden of establishing probable cause. To support this proposition, Appellants cite to the Eleventh Circuit Pattern Jury Instructions, Basic Instruction 2.1, which states: "The indictment or formal charge against any Defendant is not evidence of guilt." Appellants, however, are confusing the difference between evidence of guilt and evidence of probable cause. *See Fernandez*, 268 U.S. at 312, 45 S. Ct. at 542 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict."). "The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Collins v. Loisel*, 259 U.S. 309, 316, 42 S. Ct. 469, 472 (1922). While an indictment may not be evidence of guilt, it can, under some circumstances, be sufficient to demonstrate that probable cause exists. *See, e.g.*, *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) (en banc) ("[I]t has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue.").

("[W]e have recognized that unsworn hearsay statements contained in properly authenticated documents can constitute competent evidence to support a certificate of extradition."). In sum, the magistrate's finding of probable cause was not undermined by the fact that the indictment contained unsworn hearsay statements of witnesses and victims.[12]

Finally, contrary to Appellants' assertions, the magistrate's probable cause determination was based on more than mere unsupported allegations. As we mentioned earlier, the 106-page bill of indictment describes, in significant detail, Appellants' alleged fraudulent activities. The indictment lists the specific dates of events, includes the names of witnesses and victims, and details the amount of money that was involved in each transaction. After reviewing the indictment, the magistrate judge found the victims' statements were consistent with each other and were corroborated by the statements of non-victims, such as employees at UAB "Gražna." The veracity of these statements was further supported by the fact that upon questioning, Appellants gave inconsistent answers and did not deny their involvement in the alleged acts. The magistrate judge also undertook the burdensome task of comparing each witness statement with each fraud count to

---

[12] In *Escobedo*, we upheld the magistrate judge's probable cause determination, even though the magistrate relied, in part, on a Mexican document containing "compound hearsay." 623 F.2d at 1102 n.10.

ensure there was adequate support for each of the charges. In doing so, the magistrate judge found sufficient evidence to extradite Appellants on nearly all of the counts of fraud. Furthermore, Appellants' flight from Lithuania after signing written undertakings to remain in the country, and after their case was set for trial, provides additional support for the magistrate's finding of probable cause. *See Fernandez*, 268 U.S. at 313, 45 S. Ct. at 543 (holding there was evidence to believe the fugitive was guilty because, among other reasons, "he fled the country").

For these reasons, we conclude the district court did not err when it found there was sufficiently reliable evidence in the record to warrant the magistrate judge's probable cause determination. *See Terlinden v. Ames*, 184 U.S. 270, 279–80, 22 S. Ct. 486, 488 (1902) (noting "the judgment of the magistrate rendered in good faith on legal evidence that accused is guilty of the act charged . . . cannot be reviewed on the weight of evidence, and is final for the purposes of the preliminary examination unless palpably erroneous in law") (internal quotation marks and citation omitted).[13]

---

[13] In *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1984), the Ninth Circuit reached a similar conclusion. There, the court considered whether unsworn police reports, which summarized witnesses' statements, constituted competent evidence to establish probable cause at an extradition hearing. *Id.* at 625. The fugitive argued that "the evidence was not competent because it was unsworn multiple hearsay." *Id.* at 626. The Ninth Circuit rejected this argument, holding the unsworn reports were sufficiently reliable. *Id.* at 627. The court explained the

## IV.  CONCLUSION

We hold the district court correctly determined there was competent evidence to support the magistrate judge's conclusion that probable cause existed to extradite Appellants on most of the fraud charges.  Accordingly, we affirm the district court's denial of Appellants' habeas petitions.

AFFIRMED.

---

reports were not "merely fragments of half-forgotten conversations," but rather they were "abundant in detail, containing specifics of time and place, price and quantity."  *Id.*; *see also Emani v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450–52 (9th Cir. 1987) (holding a German investigator's affidavit was competent evidence to establish probable cause even though it contained unsworn hearsay statements).