PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BLENDI HAXHIAJ,
                    *Petitioner-Appellant,*

v.

JOHN HACKMAN, United States
Marshal for the Eastern District of
Virginia,
                    *Respondent-Appellee.*

No. 07-6836

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:06-cv-01088-LMB)

Argued: March 20, 2008

Decided: June 9, 2008

Before TRAXLER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Senior Judge Hamilton and Senior Judge Hansen joined.

## COUNSEL

**ARGUED:** Darren Johnson, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Alexandria, Virginia, for Appellant. Justin Okun,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Lawrence J. Leiser, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Blendi Haxhiaj seeks review of the district court's denial of habeas relief from a certification of extradition declaring that Haxhiaj is eligible to be extradited to Italy to serve a 12-year sentence imposed in 2003 by an Italian court as a result of a drug trafficking conviction. Haxhiaj contends that there was insufficient evidence presented to the extradition court to establish probable cause that he committed the underlying drug offense, and hence the certification should not have issued. *See* 18 U.S.C.A. § 3184 (West Supp. 2007). As explained below, we conclude that there is sufficient evidence in the record to support the extradition court's finding of probable cause. Accordingly, we affirm the district court's denial of Haxhiaj's habeas petition.

I.

Haxhiaj is an Albanian national who was charged in Italy with various crimes arising from his participation in a large drug-trafficking organization that transported heroin and other illegal drugs from Albania into Italy between 1997 and August 2000. In 2000, Italian law enforcement agents arrested numerous participants in this conspiracy, including Haxhiaj's sister, Doriana. Haxhiaj avoided arrest, however, by fleeing to the United States in November 2000 and subsequently applying for asylum here.

In June 2003, Haxhiaj was convicted *in absentia* by the Court of Milan on three drug-trafficking counts in a multiple-count indictment relating to the conspiracy; he was acquitted on seven counts. In July

2004, Haxhiaj's convictions were affirmed by the Court of Appeal of Milan and became final on October 14, 2004, whereupon Haxhiaj was sentenced to a prison term of twelve and one-half years. The Court of Appeal of Milan then issued a warrant for Haxhiaj's arrest as a fugitive.

Meanwhile, Haxhiaj was living and working in Madison, Wisconsin. In February 2004, apparently unaware that Haxhiaj was a fugitive from Italy when he arrived here or that he had been convicted by an Italian court for international drug trafficking since his arrival, the United States granted Haxhiaj asylum from Albania. The Department of Homeland Security ("DHS") learned of Haxhiaj's fugitive status the following year and, on October 11, 2005, took Haxhiaj into custody as he was re-entering the United States after an overseas trip. On November 8, 2005, pursuant to the bilateral extradition treaty between the United States and Italy (the "Treaty" or "Extradition Treaty"), the United States Attorney for the Eastern District of Virginia filed a formal extradition request for Haxhiaj on behalf of Italy. *See* Extradition Treaty between the Government of the United States of America and the Government of the Republic of Italy, U.S.-Italy, Oct. 13, 1983, 35 U.S.T. 3023, art. I; *see* 18 U.S.C.A. § 3184 (establishing extradition proceedings in the United States).

The Treaty imposes mutual obligations upon the United States and Italy "to extradite to each other . . . persons whom the authorities of the Requesting Party have charged with or found guilty of an extraditable offense." U.S.-Italy Extradition Treaty, art. I. An extraditable offense under the Treaty is an offense that is "punishable under the laws of both Contracting Parties by deprivation of liberty for a period of more than one year," *id.*, art. II, ¶ 1, including "[a]ny type of association to commit [such] offenses" and "conspiracy to commit [such] an offense," *id.*, art. II, ¶ 2.

The government seeks extradition based on Haxhiaj's three counts of conviction, describing them as follows: (1) "having unlawfully kept for distribution purposes 1.932 kilograms of heroin" on June 5, 2000; (2) "[f]rom approximately 1997 through . . . August 2000, in Milan, Bergamo, Naples, Brindisi and Ravenna, Italy, and in Albania, having associated with others for the purpose of trafficking in illegal drugs, namely heroin, cocaine and marijuana;" and (3) "[f]rom about

July 31, 2000 to August 12, 2000, in Naples, Italy, having purchased, received and kept with the intent to distribute approximately 60 kilograms of marijuana." J.A. 12. In support of its extradition request, the government offered a certified copy of the judgment issued by the Court of Appeal of Milan affirming Haxhiaj's conviction.

The magistrate judge conducted an extradition hearing pursuant to 18 U.S.C.A. § 3184 "to determine whether (1) the crime[s are] extraditable; and (2) there is probable cause to sustain the charge[s]." *Ordinola v. Hackman*, 478 F.3d 588, 608 (4th Cir.) (Traxler, J., concurring) (internal quotation marks omitted), *cert. denied*, 128 S. Ct. 373 (2007). As for whether Haxhiaj was charged with "extraditable" crimes, the magistrate judge noted that it was "essentially uncontested" that "[t]he drug trafficking crimes for which [Haxhiaj's] surrender is sought are covered by the terms of the Treaty," J.A. 192, and Haxhiaj does not challenge this conclusion now. However, the magistrate judge determined that the government failed to submit sufficient evidence of probable cause and refused to certify Haxhiaj for extradition. The magistrate judge reasoned that, unlike evidence of a conviction where the fugitive was present at trial, mere evidence of an *in absentia* conviction, by itself, will not sustain a finding of probable cause as required by § 3184. Instead, the magistrate judge was looking for evidence of the kind "adduced at the trial *in absentia*" in order to make an independent assessment of probable cause. J.A. 195.

Finding no such evidence, the magistrate judge denied the request for a certificate of extradition; however, instead of dismissing the extradition complaint, the magistrate judge permitted the government to supplement the record. The government then submitted a statement from Procuratore Generale Dr. Bruno Fenzia, an Italian magistrate who performs a prosecutorial function in the Italian system of criminal justice. Fenzia's statement summarized the evidence supporting Haxhiaj's conviction, including the testimony of one of the investigators as well as the results of wiretaps and physical surveillance. In support of his summary, Fenzia cited relevant portions of the written opinion of the Court of Appeal of Milan affirming Haxhiaj's conviction. The government, however, did not submit trial transcripts of the investigator's testimony or any evidence underlying such testimony, like transcripts of the wiretapped phone conversations or documents created during the investigation of Haxhiaj and his co-conspirators.

Additionally, Fenzia's statement did not explain the basis for his summary of the evidence, and thus it is unclear whether Fenzia related this information based on personal knowledge or whether he gleaned it solely from the Court of Appeal's opinion or some other source.

On August 16, 2006, the magistrate judge concluded that, in view of the additional information submitted by the government, there was probable cause to believe that Haxhiaj committed the crimes identified in Italy's extradition request. Accordingly, the magistrate judge issued a certificate of extraditability. *See* 18 U.S.C.A. § 3184; *see also Ordinola*, 478 F.3d at 609 ("If the extradition judge concludes that there is, in fact, probable cause, he *is required to certify* the individual as extraditable to the Secretary of State.") (internal quotation marks omitted) (Traxler, J., concurring).

Because the extradition statute does not allow the fugitive to seek direct review of an extradition certification, Haxhiaj next petitioned for habeas review pursuant to 28 U.S.C.A. § 2241. *See Ordinola*, 478 F.3d at 609 (explaining that "the fugitive has but one means of judicial recourse—filing a habeas petition"); *Kastnerova v. United States*, 365 F.3d 980, 984 n.4 (11th Cir. 2004) ("There is no direct appeal in extradition proceedings."); *see also* M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 911 (5th ed. 2007) ("An extradition order is not a final order within the meaning of Title 28 U.S.C. § 1291 . . . [and therefore] there is no direct appeal from the decision of the judicial officer conducting the extradition proceedings."). The district court, noting the narrow scope of habeas review in the extradition context, recognized that it was not permitted to disturb the decision of the magistrate judge to issue an extradition certification as long as there was "any evidence" in the record supporting the finding of probable cause. J.A. 521. The district court, after reviewing the record, found that there was indeed evidence supporting the probable cause determination:

> Although the magistrate judge correctly found that a conviction *in absentia* is not sufficient by itself to meet the probable cause requirement of the Treaty and the Statute, the evidence contained in the record through the detailed opinion of the Court of Appeal of Milan is much more than the mere fact of conviction. The opinion methodically described

each offense charged against each defendant and detailed the wire tap and surveillance evidence that supported the conviction of the various members of the conspiracy.

J.A. 523-24. The district court, therefore, rejected the notion that "actual evidence in the form of witness testimony, affidavits, or transcripts of wiretaps" was required for a probable cause determination. J.A. 527. Observing that there was no difference between the evidence originally submitted and the evidence before the magistrate judge after the government supplemented the record, the district court opined that "the magistrate judge erred in not finding probable cause on the basis of the appellate opinion presented in the original extradition request." J.A. 526. Because the magistrate judge ultimately found that there was probable cause, however, the district court denied the habeas petition and refused to disturb the certification of extraditability.

Subsequently, the district court issued an order clarifying the record. The court explained that the "detailed summary of the trial evidence by the Court of Appeal of Milan" had not been "among the materials presented [to the magistrate judge] in the original request" and was submitted only with the government's supplemental materials. J.A. 531. Based on this clarification, the district court concluded that "the magistrate judge was correct in his initial finding that the record at the time of the first extradition hearing was insufficient to establish probable cause." J.A. 531. The clarification, however, did not alter the district court's ultimate conclusion that the full record as supplemented was sufficient to support the magistrate judge's finding of probable cause.

## II.

Habeas review of an extradition certification is quite narrow, limited to consideration of whether the extradition court properly exercised jurisdiction, whether the crime upon which extradition is sought qualifies under the relevant treaty as an extraditable offense, and whether the record contains sufficient evidence to support the extradition court's probable cause determination. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *see also Sidali v. INS*, 107 F.3d 191, 195 (3d Cir. 1997); *United States v. Wiebe*, 733 F.2d 549, 552 (8th Cir.

1984). Neither the magistrate judge's jurisdiction nor the extraditability of the underlying offense are matters of dispute in this appeal; we focus solely on the magistrate judge's probable cause determination.

During the extradition hearing, the magistrate judge applies the same probable cause standard that applies in federal preliminary hearings, "meaning that the magistrate judge's role is merely to determine whether there is competent evidence to justify holding the accused to await trial." *Ordinola*, 478 F.3d at 608 (Traxler, J., concurring) (internal quotation marks omitted). The extradition hearing is not to serve as a full-blown trial and serves simply to permit a limited inquiry "into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country." *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976). Section 3184 therefore requires the extradition court to conduct essentially the same preliminary inquiry typically required for issuance of a search warrant or an arrest warrant for crimes committed in this country—a familiar task for any magistrate judge. *See Eain v. Wilkes*, 641 F.2d 504, 508-09 (7th Cir. 1981) (explaining that an extradition request must "be supported by sufficient evidence to show . . . that there is sufficient justification for the individual's arrest had the charged crime been committed in the United States").

In reviewing the extradition court's finding of probable cause under § 3184, a federal habeas court applies a standard of review that "is *at least* as deferential, if not more so, than that applied to a magistrate judge's decision to issue a search warrant." *Ordinola*, 478 F.3d at 609-10 (Traxler, J., concurring). "Just as the magistrate judge's underlying determination is not a mini-trial on the guilt or innocence of the fugitive, . . . habeas review should not duplicate the extradition hearing." *Id.* at 610. Accordingly, our limited function in performing habeas review of the decision to issue a certificate of extradition is to determine whether there is "any evidence" in the record supporting the probable cause finding of the magistrate judge. *Prushinowski v. Samples*, 734 F.2d 1016, 1018 (4th Cir. 1984) (emphasis omitted) (quoting *Fernandez*, 268 U.S. at 312); *see Kastnerova*, 365 F.3d at 984-85.

The evidence submitted in support of the extradition request consists of the written opinion of the Court of Appeal of Milan affirming

Haxhiaj's conviction and the statement of Italian magistrate Fenzia summarizing the evidence. As previously explained, the district court concluded that these documents satisfied the "any evidence" standard and that the appellate opinion, even standing alone, provided a sufficient basis for the probable cause finding because it "methodically described each offense charged against each defendant and detailed the wire tap and surveillance evidence that supported the conviction of the various members of the conspiracy." J.A. 524.

Haxhiaj insists, however, that the government's evidence was insufficient to satisfy even the generous "any evidence" standard that applies in habeas review. Haxhiaj argues that mere evidence of an *in absentia* conviction, without more, is insufficient to support a probable cause determination by the extradition court. Rather, he maintains that the government was required to submit "actual evidence" that would permit the extradition court to make its own independent assessment of probable cause, such as trial testimony, documents created by investigators, transcripts of wiretapped conversations or affidavits from law enforcement officials with personal knowledge of the evidence against Haxhiaj.

Haxhiaj appears to derive his "actual evidence" requirement for probable cause from two sources. First, he contends that the language of the Extradition Treaty requires the requesting nation to submit such evidence in order to establish the probable cause required for extradition. Second, Haxhiaj looks to the extradition statute, *see* 18 U.S.C.A. § 3184, as well as various judicial interpretations of what proof is required to satisfy the probable cause standard for an extradition request based on an *in absentia* conviction, *see, e.g.*, *Gallina v. Fraser*, 278 F.2d 77, 78-79 (2nd Cir. 1960). We conclude, as explained below, that neither basis requires "actual evidence" — as Haxhiaj defines that phrase — to support a finding of probable cause.

### A.

We first look to the language of the Extradition Treaty to determine whether it mandates that an extradition request based on an *in absentia* conviction be supported by "actual evidence" establishing a reasonable basis to believe that Haxhiaj committed the crime for which he is sought. Although the probable cause requirement for the issu-

ance of a certification of extradition is a matter of statute, *see* 18 U.S.C.A. § 3184; *Ordinola*, 478 F.3d at 608 (noting that "courts have uniformly interpreted the statutory language to require a finding of 'probable cause'") (Traxler, J., concurring), the applicable extradition treaty often bears upon the scope of probable cause by establishing what constitutes an adequate evidentiary showing. *See* Bassiouni, *supra* at 877 (noting that "[t]he finding of probable cause is specifically required by legislation in 18 U.S.C. § 3184 and is also embodied in United States treaties").

As reflected by Article X of the Extradition Treaty, the United States and Italy agreed upon specific documentary support that must accompany an extradition request between the two countries. Paragraph 2 of Article X requires that all extradition requests be accompanied by "documents, statements or other information" identifying the individual sought, including, "if available, physical description, photographs and fingerprints"; "a brief statement of the facts of the case, including the time and location of the offense"; and "the texts of the laws" setting forth the elements of the offense for which extradition is sought, the punishment for such offense, and the applicable limitations period, if any. *See* U.S.-Italy Extradition Treaty, art. X, ¶ 2.

There are additional requirements, depending on whether or not the person sought to be extradited has already been convicted of the subject offense in the courts of the requesting nation. For those who have been convicted already, paragraph 4 of Article X requires the extradition request to be accompanied by "a copy of the judgment of conviction"; "a copy of the sentence and a statement as to the duration of the penalty still to be served"; and documents demonstrating "that the person sought is the person convicted." *Id.*, art X, ¶ 4. When extradition is sought for a person who has been charged but not convicted of an offense, however, more detailed information is required under paragraph 3, including "a certified copy of the arrest warrant" and "a summary of the facts of the case, of the relevant evidence and of the conclusions reached, providing a reasonable basis to believe that the person sought committed the offense." *Id.*, art X, ¶ 3(a)-(b). The Treaty therefore incorporates the probable cause requirement of § 3184 for extradition based on a mere criminal charge.[1]

---

[1]When Italy is seeking extradition, as it is here, the case summary "shall be written by a magistrate." Extradition Treaty between the Gov-

Finally, Article X specifically addresses requests to extradite those who were convicted of an extraditable offense *in absentia*:

> If the person sought has been convicted in absentia or in contumacy, all issues relating to this aspect of the request shall be decided by the Executive Authority of the United States or the competent authorities of Italy. In such cases, the Requesting Party shall submit such documents as are described in paragraphs 2, 3 and 4 of this Article and a statement regarding the procedures, if any, that would be available to the person sought if he or she were extradited.

*Id.*, art. X, ¶ 5. By incorporating the requirements of paragraph three into paragraph five, the Treaty requires more proof than just the fact of an *in absentia* conviction, and directs that a summary of the facts and evidence be supplied to establish "a reasonable basis to believe that the person sought committed the offense for which extradition is requested," *id.*, art. X, ¶¶ 3(b), *i.e.*, probable cause under § 3184.

Therefore, for an extradition request based upon a conviction *in absentia*, the Treaty requires more detail than mere proof of the *fact* of conviction to establish probable cause, *i.e.*, "a reasonable basis to believe that the person sought committed the offense," *id.*, art. X, ¶ 3(b), but it clearly does not require the kind of actual evidence suggested by Haxhiaj, such as trial testimony or transcripts of the wiretap evidence. Instead, the Extradition Treaty requires merely a summary of the facts and relevant evidence sufficient to provide a reasonable basis to believe the relator committed the offense. We conclude that the certified copy of the appellate opinion of the Court of Appeal of Milan satisfies the showing required by the Treaty and clearly affords a reasonable basis upon which to find probable cause. The opinion is remarkable for its detailed description of the evidence developed dur-

---

ernment of the United States of America and the Government of the Republic of Italy, U.S.-Italy, Oct. 13, 1983, 35 U.S.T. 3023, art. X, ¶ 3(b). When the United States is the requesting party, the summary "shall be written by the prosecutor and shall include a copy of the charge." *Id.*

ing the investigation of Haxhiaj's drug trafficking ring, including this key wiretap describing Haxhiaj's role:

> Having obtained [kingpin] Eduart Tresa's go-ahead, Boka takes action to ensure that the batch of drugs will be delivered. He contacts [Haxhiaj] and gives him instructions, after which he calls a certain Franscesco and informs him of [Haxhiaj's] arrival, to whom he should hand over the drug. Shortly afterwards, called by Di Serio, Boka tells him of [Haxhiaj's] arrival in the hotel. Called by Cosimo Vita, Boka reassures him, telling him that Di Serio and [Haxhiaj] are meeting . . . .

> The Police observed that a Volvo SW . . . was parked in the hotel garage.

> . . . .

> At about 10.45 the Police saw the VW Polo . . . drive up to the Martini Hotel. Out stepped a young man ([Haxhiaj]) who was met by Di Serio. A few moments later they were joined by a third person in a Fiat Uno . . . .

> . . . .

> Other conversations were tapped between Armand Boka and [Haxhiaj], among them those confirming that the "exchange" was about to take place . . . and then that it had actually take[n] place.

> Then at 14.25 . . . the Police . . . observed the Fiat Uno and the Volvo indicated above approaching, and they carried out their control [stop].

> Now Di Serio was in the Volvo and the Fiat was being driven by Vittorio Nisi. The search brought to light, concealed in the . . . Fiat Uno, 4 packs containing heroin weighing about 2 kg in all. Vittorio Nisi was placed under arrest, while Di Serio was allowed to go.

At 21.09 the same day, Eduart Tresa received confirma-
tion from Armand Boka that the "transaction" had taken
place.

J.A. 524-25 (internal quotation marks omitted).

This level of detail is clearly sufficient to satisfy the Treaty and
provide the requisite probable cause for the issuance of a certification
of extradition under § 3184. Accordingly, we conclude that the dis-
trict court properly denied Haxhiaj's petition for habeas relief.

B.

Haxhiaj urges us to conclude that the extradition statute, apart from
the language of the Extradition Treaty between the United States and
Italy, requires the requesting nation to submit underlying trial evi-
dence in support of an *in absentia* conviction. We disagree.

A foreign conviction entered after a trial at which the defendant
was present suffices, in and of itself, to establish probable cause. *See,
e.g.*, *Spatola v. United States*, 925 F.2d 615, 618 (2nd Cir. 1991);
*Restatement (Third) of Foreign Relations Law of the United States*
§ 476 comment b (1987) ("With respect to persons whose extradition
is sought after conviction in the requesting state, the [probable cause]
requirement is met by proof of the judgment of conviction and, where
applicable, of sentence."). The extradition court need not "mak[e] an
independent assessment of the facts surrounding [the] offenses" and
may rely solely on a certified copy of the foreign conviction. *Spatola*,
925 F.2d at 618. Haxhiaj does not challenge this premise, which
appears to be widely accepted among the federal courts that have con-
sidered the issue. *See, e.g.*, *Sidali*, 107 F.3d at 196; *Spatola*, 925 F.2d
at 618; *Germany v. United States*, ___ F.Supp.2d ___, 2007 WL
2581894, at *7 (E.D.N.Y. Sept. 5, 2007); *United States v. Clark*, 470
F. Supp. 976, 978 (D. Vt. 1979).

The principle that foreign convictions generally constitute probable
cause under § 3184 is rooted in comity. The duty to extradite interna-
tionally arises solely as a matter of treaty, *see United States v.
Alvarez-Machain*, 504 U.S. 655, 664 (1992), and the decision to

extradite is ultimately an executive function, *see Martin v. Warden*, 993 F.2d 824, 828 (11th Cir. 1993). "Extradition proceedings are grounded in principles of international comity, which would be ill-served by requiring foreign governments to submit their purposes and procedures to the security of United States courts." *Koskotas v. Roche*, 931 F.2d 169, 174 (1st Cir. 1991). To this end, "[q]uestions about the procedural fairness of another sovereign's justice system . . . are within the purview of the executive branch," as are questions about "whether the requesting nation is sincere in its demand for extradition or is merely using the process as a subterfuge." *Ordinola*, 478 F.3d at 607 (Traxler, J., concurring). Therefore, we refrain "from delving into and assessing the competence of the requesting government's system of justice." *Id.* To then conclude that foreign convictions "do not constitute probable cause in the United States would require United States judicial officers to review trial records and, consequently, substitute their judgment for that of foreign judges and juries. Such an inquiry would be inconsistent with principles of comity." *Spatola*, 925 F.2d at 618. The primary tenet of comity is "that, when possible, the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Id.*

According to Haxhiaj, however, when the foreign conviction is *in absentia*, this reasoning does not apply and evidence beyond the fact of the foreign conviction itself is necessary to establish probable cause. *See Gallina*, 278 F.2d at 78-79; *Argento v. Horn*, 241 F.2d 258, 259 n.1 (6th Cir. 1957); *In re Extradition of D'Amico*, 177 F. Supp. 648, 651 n.3 (S.D.N.Y. 1959). By and large, the precedents upon which Haxhiaj relies treat *in absentia* convictions as nothing more than charges of criminal wrongdoing, requiring the government to present proof from which the magistrate judge can make an independent assessment of whether probable cause exists. *See Argento*, 241 F.2d at 264 n.1; *see generally* Bassiouni, *supra*, at 792 n.506 (collecting decisions in which a conviction *in absentia* "is regarded as a charge, requiring independent proof of probable cause"). Underlying the disparate treatment of a conviction rendered *in absentia* is the notion that "a trial *in absentia* is not likely to be a fair trial," affording the accused "no opportunity to confront the prosecution witnesses or to present a defense" and providing no real "assistance in ascertaining

the probable guilt of the accused." Note, *Foreign Trials in Absentia: Due Process Objections to Unconditional Extradition*, 13 Stan. L. Rev. 370, 377 (1961); *see* Bassiouni, *supra*, at 792-95.

In view of the record evidence in this case, it is unnecessary for us to weigh in on the question of whether the fact of a foreign conviction, without more, can ever be sufficient to establish probable cause under § 3184 when the conviction resulted from a trial conducted *in absentia*.[2] Even assuming that the fact of an *in absentia* conviction by itself is an insufficient basis *per se* for a finding of probable cause, the government presented more than just the fact of conviction. As detailed previously, the excerpts from the appellate opinion go well beyond the mere verdict, summarizing the underlying evidence amassed against Haxhiaj and his co-conspirators. We have found nothing in the body of extradition law to suggest that such independent evidence of probable cause must be the kind of "actual evidence" Haxhiaj is seeking.

In fact, general extradition procedures under § 3184 suggest precisely the opposite. The extradition hearing is not a full criminal trial. *See Peroff*, 542 F.2d at 1249. Determining the ultimate guilt of the accused, therefore, is a function committed to the justice system of the requesting country. *See Eain*, 641 F.2d at 508; Bassiouni, *supra*, at 879 ("Reliance on the probable cause standard reflects the universal disinclination of the courts to transform the limited inquiry of the extradition hearing into a trial on the merits."). A requirement that the requesting government present "actual evidence" that it intended to

---

[2]The answer to this question is not necessarily as clear as Haxhiaj suggests. It seems debatable that the international comity justification for the general rule that foreign convictions constitute probable cause under § 3184 would not include *in absentia* foreign convictions. To assume that a foreign proceeding held *in absentia* is unfair and unreliable is essentially to "delv[e] into and assess[ ] the competence of the requesting government's system of justice." *Ordinola,* 478 F.3d at 607 (Traxler, J., concurring). Questions about the legitimacy and procedural fairness of the Italian justice system are for the executive branch, not the courts, to ponder in determining whether to exercise its discretion to grant an extradition request. *See United States v. Kin-Hong*, 110 F.3d 103, 111 (1st Cir. 1997).

submit, or already had submitted, at trial is antithetical to the comity basis that underlies extradition. Moreover, in light of the limited nature of the extradition hearing, "certain evidentiary showings inadmissible at trial will be admitted." Bassiouni, *supra*, at 879. For example, courts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context. *See, e.g.*, *Emami v. United States*, 834 F.2d 1444, 1451 (9th Cir. 1987); *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980). Unsworn statements can be sufficient to support a probable cause determination. *See Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 (11th Cir. 2005). And, the Federal Rules of Evidence do not even apply to proceedings under § 3184. *See* Fed. R. Evid. 1101(d)(3).

Clearly, the magistrate judge has a great amount of latitude in considering evidentiary support for an extradition request, and Haxhiaj has not directed us to any authority that would reduce such latitude in this particular case. We conclude that the evidentiary summary contained within the opinion of the Court of Appeal of Milan is within the scope of evidence that the extradition court may consider in making its limited preliminary decision under § 3184.

## III.

For the foregoing reasons, the order of the district court denying Haxhiaj's habeas petition is affirmed.

*AFFIRMED*