UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 16-1403**

───────────

IRAQ MIDDLE MARKET DEVELOPMENT FOUNDATION,

             Plaintiff - Appellant,

      v.

MOHAMMAD ALI MOHAMMAD HARMOOSH, a/k/a Mohammed Alharmoosh;
JAWAD ALHARMOOSH,

             Defendants - Appellees.

───────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  George L. Russell III, District Judge.
(1:15-cv-01124-GLR)

───────────

Argued:  December 7, 2016          Decided:  February 2, 2017

───────────

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

───────────

Vacated and remanded by published opinion.  Judge Motz wrote the
opinion, in which Judge Wilkinson and Judge Floyd joined.

───────────

**ARGUED:** D. Michelle Douglas, KALBIAN & HAGERTY, LLP, Washington,
D.C., for Appellant.  Mukti N. Patel, FISHERBROYLES LLP,
Princeton, New Jersey, for Appellees.  **ON BRIEF:** Haig V.
Kalbian, KALBIAN & HAGERTY, LLP, Washington, D.C., for
Appellant.

───────────

DIANA GRIBBON MOTZ, Circuit Judge:

After securing a judgment in Iraq for non-payment of a promissory note, a creditor sought to have the judgment recognized in the federal district court for the District of Maryland. The debtor contended that the judgment was not entitled to recognition given that the parties had agreed to arbitrate their disputes. The district court agreed and granted summary judgment to the debtor. Because genuine issues of material fact remain as to whether the debtor lost his right to arbitrate by utilizing the Iraqi judicial process, we must vacate and remand for further proceedings.

I.

The Iraq Middle Market Development Foundation, a non-profit corporation, makes and services loans to local businesses in Iraq. On November 10, 2006, the Foundation agreed to lend $2 million to Al-Harmoosh for General Trade, Travel, and Tourism ("AGTTT"), a company headquartered in Najaf, Iraq. The loan agreement includes an arbitration clause specifying that "[a]ll disputes, controversies and claims between the parties which may arise out of or in connection with the Agreement . . . shall be finally and exclusively settled by arbitration." The clause identifies Amman, Jordan as the venue for arbitration. As part of the deal, Mohammad Harmoosh, a managing partner of AGTTT and

2

a dual citizen of Iraq and the United States, who resides in Maryland, executed a promissory note guaranteeing repayment of the loan.

In 2010, after Harmoosh had refused to repay the loan, the Foundation tried to collect by suing him for breach of contract in federal court in Maryland. Harmoosh moved to dismiss, arguing that his alleged breach was an arbitrable dispute "aris[ing] out of or in connection with" the loan agreement. The district court agreed and dismissed the Foundation's complaint. Iraq Middle Mkt. Dev. Found. v. Al Harmoosh, 769 F. Supp. 2d 838, 842 (D. Md. 2011). Harmoosh, however, did not move to compel arbitration, as he was entitled to do under the Federal Arbitration Act. 9 U.S.C. § 3 (2012).

In February 2014, the Foundation filed another civil action against Harmoosh to collect on the promissory note, this time in the Court of First Instance for Commercial Disputes in Baghdad. Harmoosh appeared in that court through counsel and asserted at least two affirmative defenses. He contended that the court lacked personal jurisdiction and that he was not personally liable because he guaranteed the loan only in his capacity as a shareholder. The parties disagree as to whether Harmoosh raised the arbitration clause as a third defense. It is undisputed that, under Iraqi law, although a valid arbitration clause deprives a court of jurisdiction over arbitrable disputes, a

3

party waives his right to arbitrate if he fails to assert it before the trial court. Article 253, Amended Civil Procedure Code No. 83 of 1969.

In any event, the Foundation and Harmoosh litigated their dispute to final judgment in Iraq. In April 2014, the Court of First Instance found in favor of the Foundation and awarded it $2 million in damages and $424.91 in costs and legal fees. Harmoosh appealed the judgment to the Baghdad/Al-Rasafa Federal Court of Appeals, which affirmed the judgment. Harmoosh then appealed to the Federal Court of Cassation of Iraq -- the court of last resort for commercial disputes -- which also affirmed.

In April 2015, the Foundation returned to the District of Maryland and filed the two-count complaint at issue here. Count One seeks recognition of the Iraqi judgment under the Maryland Uniform Foreign Money-Judgments Recognition Act, Md. Code Ann., Cts. & Jud. Proc. §§ 10-701 et seq. (West 2016) ("Maryland Recognition Act"). Count Two alleges that Harmoosh fraudulently conveyed some of his assets both before and after the Iraqi judgment was rendered.

Under the Maryland Recognition Act, a foreign judgment regarding a sum of money is generally conclusive between the parties so long as it is "final, conclusive, and enforceable where rendered." Id. §§ 10-702, -703. However, the Act recognizes several exceptions to this general rule. Relevant

4

here, the Act provides that a court need not recognize a foreign judgment if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court." Id. § 10-704(b)(4). Harmoosh moved to dismiss, invoking this exception and arguing that the district court should not recognize the Iraqi judgment because the Iraqi proceedings were contrary to the parties' agreement to arbitrate. The Foundation responded that Harmoosh failed to assert his arbitration rights before the Iraqi trial court and therefore had waived his right to arbitrate.

Before the parties had an opportunity to conduct discovery, the district court granted summary judgment to Harmoosh on the Maryland Recognition Act claim, declining to recognize the Iraqi judgment because the Iraqi proceedings were "contrary to an arbitration provision." The court then granted Harmoosh's motion to compel arbitration of the fraudulent conveyance claim. The Foundation timely noted this appeal.

We review the district court's grant of summary judgment de novo. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Id.

5

II.

We must first determine whether the arbitration clause exception in § 10-704(b)(4) of the Maryland Recognition Act applies if a party forgoes his right to arbitrate by deciding to participate in judicial proceedings in a foreign court. This is a question of Maryland law, one that Maryland's highest court has not addressed. Because we sit in diversity, our task is to anticipate how it would rule on this question. See, e.g., Liberty Univ., Inc. v. Citizens Ins. Co. of America, 792 F.3d 520, 528 (4th Cir. 2015).

The text of § 10-704(b)(4) provides that a Maryland court need not recognize a foreign judgment if the proceedings were "contrary to" an agreement to settle the dispute out of court. Harmoosh contends that § 10-704(b)(4) permits a Maryland court to decline recognition of a foreign judgment if -- under the terms of an arbitration clause -- the dispute should not have been litigated in the first place. On this reading, any and all foreign judicial proceedings are "contrary to" an arbitration clause regardless of whether the parties forego their arbitration rights.

We cannot agree. We do not believe the General Assembly of Maryland intended to give courts discretion to enforce contractual rights the parties themselves decided to waive. By the same token, we do not believe the legislature gave courts

6

discretion to ignore the judgment of a foreign court when the parties voluntarily resolved their dispute before that court.

This court has not addressed this issue, and few other courts have interpreted exceptions similar to § 10-704(b)(4). Those that have done so have recognized that parties may waive such exceptions. See The Courage Co. v. The Chemshare Corp., 93 S.W.3d 323, 336–38 (Tex. App. 2002); Dart v. Balaam, 953 S.W.2d 478, 480 (Tex. App. 1997); cf. Montebueno Mktg., Inc. v. Del Monte Corp. USA, 570 F. App'x 675, 677 (9th Cir. 2014) (unpublished) (rejecting a waiver argument due solely to "lack of evidence"). And we have not found a single case in which a court has held, or even suggested, that exceptions similar to § 10-704(b)(4) cannot be waived. During oral argument, Harmoosh's counsel agreed with our assessment of the case law.

Moreover, we can draw guidance on the question from the fact that Maryland has largely adopted the Uniform Foreign Money-Judgments Recognition Act. See Andes v. Versant Corp., 878 F.2d 147, 149 (4th Cir. 1989). The arbitration clause exception in § 10-704(b)(4) closely tracks a provision in the Uniform Act. That portion of the Uniform Act, which provides that a court need not recognize the judgment of a foreign court if the proceedings were "contrary to" an agreement that a given dispute "was to be settled otherwise than by proceedings in that court," can be waived either expressly or by implication.

7

Uniform Foreign Money-Judgments Recognition Act of 1962 § 4(b)(5) (Unif. Law Comm'n 1962); Restatement (Third) of the Foreign Relations Law of the United States § 482, cmt. h (Am. Law Inst. 1987).[1]

Nothing suggests that the Maryland General Assembly intended a different result. On the contrary, Harmoosh's interpretation would put the arbitration clause exception in § 10-704(b)(4) at odds with Maryland common law of contracts. Under Maryland law, a party can waive the right to arbitrate a dispute just as he can waive any other contractual right. Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc., 450 A.2d 1304, 1306 (Md. 1982). And once a party waives his right to arbitrate, that right becomes unenforceable "and thus treated as though it had never existed." Stauffer Constr. Co. v. Bd. of Educ. of Montgomery Cty., 460 A.2d 609, 614 (Md. Ct. Spec. App. 1983).

As in other jurisdictions, exactly when a party waives his rights through his conduct "turns on the factual circumstances of each case." Charles J. Frank, 450 A.2d at 1307. However, Maryland's highest court has squarely held that a party who

---

[1] The only notable difference between § 10-704(b)(4) and § 4(b)(5) of the Uniform Act is that the latter applies both to arbitration clauses and to forum-selection clauses. Restatement (Third) of the Foreign Relations Law of the United States § 482, cmt. h (Am. Law Inst. 1987). By contrast, § 10-704(b)(4) applies only to arbitration clauses.

litigates an arbitrable dispute to final judgment waives his right to later arbitrate the dispute. Id. This rule respects the fundamental principles of freedom of contract and the rationale for enforcing arbitration and forum-selection clauses: the "belief that where parties can agree to a mutually optimal method and forum for dispute resolution, it serves the interests of efficiency and economy to allow them to do so." Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 222–23 (1st Cir. 1995) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633 (1985)).

Against this background, we find it highly unlikely that the Maryland General Assembly intended the arbitration clause exception to apply when parties have waived their rights to arbitrate. Such a rule would mean that conduct which renders an arbitration clause unenforceable if it occurs in a domestic court would have no effect at all if it occurs in a foreign court. It would also mean that the parties' decision to forego arbitration and litigate in domestic courts would bind them, while a similar decision to litigate in a foreign court would not. Absent some affirmative indication, we will not infer that the Maryland General Assembly intended to carve out such an exception to the common law. See Spangler v. McQuitty, 141 A.3d 156, 166 (Md. 2016) ("[S]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the

[General Assembly] . . . intended to make any alteration in the common law other than what has been specified and plainly pronounced." (second alteration in original) (quoting <u>Cosby v. Dep't of Human Res.</u>, 42 A.3d 596, 606 (Md. 2012))).

Finally, construing the arbitration exception as Harmoosh suggests would frustrate the overarching purpose of the Maryland Recognition Act.  It is well settled that the Act "was intended to promote principles of international comity by assuring foreign nations that their judgments would, under certain well-defined circumstances, be given recognition by [Maryland] courts."  <u>Wolff v. Wolff</u>, 389 A.2d 413, 417 (Md. Ct. Spec. App. 1978), <u>aff'd</u> 401 A.2d 479 (Md. 1979) (per curiam); <u>see also</u> <u>Guinness PLC v. Ward</u>, 955 F.2d 875, 884 (4th Cir. 1992) (quoting <u>Wolff</u>).

By giving foreign nations a measure of certainty that Maryland courts will respect their judgments, the Maryland Recognition Act "hopefully facilitate[s] recognition of similar United States' judgments abroad."  <u>Wolff</u>, 389 A.2d at 417.  As the drafters of the Uniform Act explained, the need for such assurances arose because "[i]n a large number of civil law countries, grant of conclusive effect to money-judgments from foreign courts is made dependent upon reciprocity."  Uniform Foreign Money-Judgments Recognition Act of 1962, prefatory note (Unif. Law Comm'n 1962).  By providing these assurances, the

10

drafters hoped the Uniform Act would "make it more likely that judgments rendered" in adopting states would "be recognized abroad." Id.

Harmoosh's interpretation would inject a level of uncertainty into the process of recognizing foreign judgments that the Maryland General Assembly clearly intended to avoid. Under his interpretation, a court in Maryland would have almost complete discretion to decide whether to recognize a foreign judgment that both parties had voluntarily sought. This would show foreign courts none of the "deference and respect" crucial to comity. Comity: Judicial Comity, Black's Law Dictionary (4th ed. 1951). Indeed, it would show those courts no deference or respect at all. As a result, foreign nations would have no assurance that Maryland courts would respect their resolution of disputes involving contracts with arbitration clauses. They would therefore have little reason to recognize similar judgments from Maryland courts. The General Assembly sought to avoid precisely this mischief when it enacted the Maryland Recognition Act.

Judicial proceedings in a foreign court are not "contrary to" an arbitration clause for the purposes of the Maryland Recognition Act if the parties choose to forego their rights to arbitrate by participating in those proceedings. Section 10-704(b)(4) simply does not apply in that event.

11

III.

We next determine whether the Foundation has raised genuine issues of material fact as to whether Harmoosh decided to forego his arbitration rights.

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2012) (the "Act"), governs resolution of this question. The Act applies to arbitration clauses in contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both the loan agreement and the promissory note evidence such a transaction. Both documents pertain to a loan made by the Foundation, a Texas corporation, to AGTTT, an Iraqi corporation. See Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F.2d 689, 693 (4th Cir. 1956) ("A contract made by an American corporation with a foreign one . . . involves commerce with a foreign country."). Thus, as the parties agree, we look to the Act when determining if the Foundation offered sufficient evidence to prevent the grant of summary judgment to Harmoosh.

Under the Act, a party loses his right to arbitrate when he is "in default in proceeding with such arbitration." 9 U.S.C. § 3. "Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009). Thus, a party defaults and so waives his right to

12

arbitrate under the Act only if he "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice" the other party. Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985); see also Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012).

In this case, not even Harmoosh disputes that his waiver of the arbitration right, if proven, would prejudice the Foundation. This is wise. If the Foundation proves what it has alleged -- that Harmoosh waived his right to arbitrate by litigating the dispute in Iraqi courts -- allowing him to assert that right now would deprive the Foundation of its entitlement to recover on a $2 million judgment. Under any reasonable definition of "prejudice," this would be highly prejudicial.

Thus, the controlling question is this: did the Foundation raise genuine issues of material fact that preclude a summary judgment holding that Harmoosh preserved his arbitration rights? We believe it clearly did. Without any discovery, the Foundation offered evidence that Harmoosh was aware of his right to arbitrate (having successfully asserted that right once before) and nonetheless voluntarily litigated his dispute with the Foundation to final judgment in an Iraqi court. The Foundation offered evidence that Harmoosh voluntarily appeared through counsel before the Iraqi trial court, asserted several

13

defenses, and litigated those defenses to final judgment. After the Iraqi trial court awarded the Foundation a $2 million judgment, Harmoosh appealed all the way to the Iraqi court of last resort, and he lost.

The Foundation supplemented this undisputed evidence with the declaration of Salam Zuhair Dhia, its local counsel in the Iraqi proceedings. Dhia declared that the Foundation pursued litigation in Iraq to avoid the high costs of arbitration in Jordan and that Harmoosh never raised the arbitration clause as a defense at any point during the proceedings before the trial court.

According to Dhia, "[i]t is common practice in the Iraqi Courts of First Instance for the court to prepare a short summary of what occurred and what arguments were raised at each hearing." The Foundation submitted purported copies of these summaries from the Iraqi proceedings, along with certified English translations. The summaries indicate that Harmoosh raised two defenses but never asserted his rights under the arbitration clause. Perhaps most tellingly, Harmoosh's local counsel appears to have signed the summaries detailing what defenses he had raised.

In opposition, Harmoosh offered the unsworn, unverified declaration of his own local counsel, who asserts that he raised the arbitration clause to "the court" in Iraq and that "the

14

court did not consider the defense in both the [trial] and appeal stages." Harmoosh also submitted the appellate brief his counsel filed with the Baghdad/Al-Rasafa Federal Court of Appeals, in which his counsel lists the arbitration clause as one reason for overturning the trial court's decision but does not state that the defense was raised before the trial court.

Construing this evidence in the light most favorable to the Foundation, genuine issues of material fact remain as to whether Harmoosh defaulted his right to arbitrate. A reasonable factfinder could determine that Harmoosh chose to waive his right to arbitrate and instead litigated his dispute in the Iraqi courts to avoid the time and cost of arbitration. Further discovery and development of the record will undoubtedly clarify these issues. But given the present record, Harmoosh was not entitled to summary judgment on the Maryland Recognition Act claim.

## IV.

For the foregoing reasons, the judgment[2] of the district court is

---

[2] The district court also held that "[b]ecause" it would "not recognize the Iraqi Judgment," the Foundation was a creditor only by virtue of the loan agreement. As such, the district court held that the fraudulent conveyance claim arose from the loan agreement and was arbitrable. This may be the
(Continued)

15

VACATED AND REMANDED.

---

correct result in the final analysis.  However, for the reasons discussed above, we believe it is too soon to say whether Harmoosh defaulted his arbitration rights.  It is therefore too soon to say the Foundation is a creditor only by virtue of the loan agreement.  Accordingly, we must vacate the entire judgment of the district court, including its order compelling arbitration of the fraudulent conveyance claim.

16