**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2212

IRAQ MIDDLE MARKET DEVELOPMENT FOUNDATION,

Plaintiff - Appellant,

v.

MOHAMMAD ALI MOHAMMAD HARMOOSH, a/k/a Mohammed Alharmoosh;
JAWAD ALHARMOOSH,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
George L. Russell, III, District Judge.  (1:15-cv-01124-GLR)

Argued:  October 30, 2019                          Decided:  January 13, 2020

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion.  Judge Motz wrote the opinion, in which
Judge Wilkinson and Judge Floyd joined.

**ARGUED:**  D. Michelle Douglas, KALBIAN & HAGERTY, LLP, Washington, D.C., for
Appellant.   Mukti N. Patel, FISHERBROYLES LLP, Princeton, New Jersey, for
Appellees.  **ON BRIEF:**  Haig V. Kalbian, Evan M. Lisull, KALBIAN & HAGERTY,
LLP, Washington, D.C., for Appellant.  Gary C. Adler, CLARK HILL PLC, Washington,
D.C., for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

This case has a long and somewhat complicated history, and it returns to us after remand to the district court. The controversy here arises from nonpayment of a promissory note. A creditor sought recognition from a federal district court of a foreign judgment that required the debtor to pay the note. The debtor argued that the foreign judgment should not be recognized because the parties had agreed to arbitrate their dispute. The district court agreed and granted summary judgment to the debtor. On appeal, we vacated and remanded, holding that genuine issues of material fact precluded finding that the debtor had asserted a right to arbitrate in the foreign court. After discovery, the debtor again moved for summary judgment and the district court again granted the motion, relying heavily on perceived inadequacies in the foreign judicial process that assertedly excused the debtor even if he failed to assert his right to arbitration in the foreign forum. For the reasons set forth within, we must again vacate the judgment of the district court and remand for further proceedings.

I.

The Iraq Middle Market Development Foundation ("Foundation"), a Texas nonprofit corporation, loaned $2 million to Al-Harmoosh for General Trade, Travel, and Tourism ("AGTTT"), a company headquartered in Iraq. Mohammad Harmoosh, a managing partner of AGTTT and a dual Iraqi-American citizen residing in Maryland, executed a promissory note guaranteeing repayment of the loan. The loan agreement includes an arbitration clause, which provides that "[a]ll disputes, controversies and claims

between the parties which may arise out of or in connection with the Agreement . . . shall be finally and exclusively settled by arbitration" in Jordan.

In 2010, the Foundation sued Harmoosh in the United States District Court for the District of Maryland, alleging that Harmoosh refused to repay the loan. The district court dismissed the action after Harmoosh asserted his right to arbitrate. *Iraq Middle Mkt. Dev. Found. v. Al Harmoosh*, 769 F. Supp. 2d 838, 843 (D. Md. 2011). But Harmoosh did not move to compel arbitration as he was entitled to do under the Federal Arbitration Act. 9 U.S.C. §§ 3–4.

Three years later, in 2014, the Foundation sued Harmoosh in an Iraqi trial court, the Court of First Instance for Commercial Suits in Baghdad. This court does not provide pretrial discovery, but held five trial hearings in this case over the course of about six weeks. The trial court granted judgment to the Foundation, awarding it $2 million USD in damages and five hundred thousand dinars in costs and legal fees.

Under Iraqi law, if a party fails to assert the right to arbitration in the trial court, the party waives that right. Article 253, Amended Civil Procedure Code No. 83 of 1969. The Iraqi trial court's hearing minutes, which summarize but do not transcribe the content of the hearings, memorialize several defenses raised by Harmoosh in the trial court but contain *no* reference to any assertion by Harmoosh of a right to arbitrate. Harmoosh's counsel, the Foundation's counsel, and the trial judge all signed the hearing minutes. The parties' experts in Iraqi law agree that after both parties sign the hearing minutes, the parties are bound by their contents, and once the judge signs, the minutes become official records that effectively serve as court orders.

3

Harmoosh appealed the trial court's order to the intermediate appellate court, the Baghdad/Al-Rasafa Federal Court of Appeals. Harmoosh challenged the judgment as, *inter alia*, contrary to his arbitration rights. But the Court of Appeals "reject[ed] the objections and grounds for appeals" and affirmed the trial court's judgment. Harmoosh then appealed to the Federal Court of Cassation of Iraq, the court of last resort for commercial disputes, which "upheld" the judgment "as valid and consistent with the law."

The Foundation returned to the District of Maryland, seeking recognition of the Iraqi judgment under the Maryland Uniform Foreign Money-Judgments Recognition Act, Md. Code Ann., Cts. & Jud. Proc. §§ 10-701 *et seq.* ("Maryland Recognition Act"). The Foundation also alleged that Harmoosh fraudulently conveyed his assets to hinder the Foundation's collection efforts.

Under the Maryland Recognition Act, a foreign judgment regarding a sum of money is generally "conclusive between the parties" in domestic courts so long as it is "final, conclusive, and enforceable where rendered." *Id.* §§ 10-702, -703. But a domestic court need not recognize a foreign judgment if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court." *Id.* § 10-704(b)(4).

Harmoosh moved to compel arbitration and to dismiss the suit, arguing that the District of Maryland need not recognize the Iraqi judgment because the Iraqi proceeding was "contrary to the parties['] agreement to arbitrate disputes." The district court agreed and, construing the motion as one for summary judgment, granted judgment to Harmoosh.

4

*Iraq Middle Mkt. Dev. Found. v. Harmoosh* (*Harmoosh I*), 175 F. Supp. 3d 567, 572, 578–79 (D. Md. 2016).

The Foundation appealed, asserting that Harmoosh lost his right to arbitrate — and thus his ability to invoke § 10-704(b)(4) as a ground for nonrecognition — by failing to raise arbitration in the Iraqi trial court. Applying the Federal Arbitration Act ("FAA"), we held that a party defaults his right to arbitrate if he fails to raise arbitration before "'so substantially utiliz[ing] the litigation machinery that to subsequently permit arbitration would prejudice'" the party opposing arbitration. *Iraq Middle Mkt. Dev. Found. v. Harmoosh* (*Harmoosh II*), 848 F.3d 235, 241 (4th Cir. 2017) (quoting *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009)) (construing 9 U.S.C. § 3). We concluded that genuine issues of material fact remained as to whether Harmoosh defaulted his right to arbitrate. *Harmoosh II*, 848 F.3d at 242. Accordingly, we vacated the judgment of the district court and remanded the case for development of the record on this point. *Id.*

On remand, the parties deposed Iraqi counsel on the question of whether Harmoosh raised an arbitration defense at any of the five hearings before the Iraqi trial court. Harmoosh's Iraqi counsel testified that he had asserted Harmoosh's right to arbitrate during the fifth trial court hearing. The Foundation's Iraqi counsel, however, swore that Harmoosh never raised an arbitration defense at any hearing before the trial court. After the close of discovery, Harmoosh moved for summary judgment in the District of Maryland, again arguing that the Iraqi judgment was contrary to the parties' arbitration agreement.

5

The district court held that even if it found that Harmoosh failed to raise an arbitration defense at a hearing before the Iraqi trial court, "that finding, without more, would be legally insufficient to establish default." *Iraq Middle Mkt. Dev. Found. v. Harmoosh* (*Harmoosh III*), No. GLR-15-1124, 2018 WL 4634140, at *5 (D. Md. Sept. 27, 2018). The court reasoned that because Iraqi trial courts resolve disputes relatively quickly and without discovery, Harmoosh could not have "substantially utilized" the Iraqi litigation machinery and so could not have defaulted his right to arbitration. *Id.* at *4–6.

The Foundation then noted the current appeal. We review the district court's grant of summary judgment de novo. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is proper only if, viewing the evidence in the light most favorable to the nonmoving party, the case presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

II.

The Maryland Recognition Act governs the decision of whether to recognize the Iraqi judgment. Md. Code Ann., Cts. & Jud. Proc. §§ 10-701 *et seq.* Under that statute, a court may decline to recognize a foreign judgment if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court." *Id.* § 10-704(b)(4). But a judgment is not contrary to an arbitration agreement if the party opposing the judgment defaulted his right to arbitration. In addressing whether Harmoosh had defaulted his right to arbitrate, in our previous opinion (without any contrary argument from the parties), we looked to the FAA.

6

As noted above, under the FAA, a party defaults the right to arbitration if he fails to assert that right before he "[1] so substantially utilizes the litigation machinery that [2] to subsequently permit arbitration would prejudice the party opposing" arbitration. *Forrester*, 553 F.3d at 343 (alteration omitted) (quoting *Maxum Founds.*, 779 F.2d at 981); *see also* 9 U.S.C. § 3. As we explained in our previous opinion, it is clear that a holding that Harmoosh did not default his right to arbitrate would indeed prejudice the Foundation. *See Harmoosh II*, 848 F.3d at 241. Thus, the question before the district court on remand was whether Harmoosh defaulted his right to arbitrate by substantially utilizing the litigation machinery in Iraq before asserting his arbitration defense.

The district court held that it was immaterial whether Harmoosh raised the arbitration defense in the Iraqi trial court because he could not substantially utilize the litigation machinery in Iraq. *Harmoosh III*, 2018 WL 4634140, at *5. This was so, the court reasoned, because the Iraqi trial court employs relatively summary procedures and does not provide pretrial discovery. *Id.* at *5–6.[1] We disagree.

First, the district court did not give proper weight to the evidence before it. That evidence, construed in the light most favorable to the Foundation (the party opposing summary judgment), is that Harmoosh waited until after the entry of *final judgment* to assert an arbitration defense. Neither Harmoosh nor the district court has pointed to a single case in which a party waited until after the entry of final judgment to raise the right

---

[1] In declining to recognize the Iraqi judgment, the district court did not rely upon Harmoosh's contention that the Iraqi judicial system is corrupt and so incompatible with the requirements of due process of law. *See* Md. Code Ann., Cts. & Jud Proc. § 10-704(a)(1). Nor does Harmoosh pursue this claim on appeal.

to arbitration without defaulting that right. Rather, in such circumstances, courts have typically found default of the right to arbitrate, even in cases involving domestic judgments. *See, e.g.*, *Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 492 (2d Cir. 2010); *Gen. Star. Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002); *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 223 (1st Cir. 1995).

Without acknowledging this line of cases, Harmoosh relies on *Forrester*, where we held a defendant defaulted its right to arbitrate by engaging in months of pretrial discovery and motions. 553 F.3d at 341, 343. Harmoosh contends that because he did not engage in similar lengthy pretrial discovery and motions, he did not default his arbitration right. What Harmoosh fails to recognize is that, viewing the evidence in the light most favorable to the Foundation, he did not assert a right to arbitration until after the entry of final judgment against him. While the defendant in *Forrester* asserted an arbitration defense on "the eve of trial," if the Foundation's evidence is credited (as it must be at this stage), Harmoosh did not assert his arbitration defense until *after* completion of trial and entry of judgment against him. *Id.* at 343.

By focusing on discovery and motions, and thus exporting our judicial norms to the Iraqi system, the district court engaged in a flawed analysis. Rather than asking whether the final judgment resulted from Harmoosh's substantial utilization of a litigation machinery that is similar to that used in United States courts, the court should have asked whether it resulted from Harmoosh's substantial utilization of the litigation machinery offered by the judicial system producing the foreign judgment, here the Iraqi trial court. To hold otherwise would undermine important principles of international comity. Those

principles demand our respect for foreign judgments in the hope and expectation of reciprocal respect for our own judgments abroad. *See Wolff v. Wolff*, 389 A.2d 413, 416–17 (Md. Ct. Spec. App. 1978), *aff'd*, 401 A.2d 479 (Md. 1979) (per curiam); *see also Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) ("[C]omity serves our international system like the mortar which cements together a brick house.").

If a litigant could fully participate in proceedings in a foreign court, suffer an adverse final judgment there, and then for the first time raise an arbitration defense and render that judgment unenforceable, the finality and predictability of such judgments would be severely undercut. This approach would categorically put such judgments at risk merely because the foreign court system operates differently from our own. And in following this approach, we would place judgments from our own courts at risk in foreign courts. *See Haxhiaj v. Hackman*, 528 F.3d 282, 291 (4th Cir. 2008) (explaining that comity is essential to fostering international cooperation and reciprocity).

Such a result would be particularly unfair in this case, given that Iraqi law clearly dictates that a party must assert his right to arbitration in the trial court or waive such a defense. Article 253, Amended Civil Procedure Code No. 83 of 1969. To refuse to honor this Iraqi law would undermine the "predictability, fairness, ease of commercial interactions, and 'stability through satisfaction of mutual expectations'" that comity serves. *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 567 (1987) (Blackmun, J., concurring in part and dissenting in part) (quoting *Laker Airways*, 731 F.2d at 937).

9

Given the importance of international comity, Harmoosh must be held to have defaulted his right to arbitrate *if* he failed to assert that right before the Iraqi trial court issued its final judgment against him. In reaching this conclusion, we are mindful of the favored position that arbitration commands in our law. In no way are we penalizing parties who assert a right to arbitration, are denied that right, and then engage in the litigation. But a party wishing to enforce its contractual right to arbitrate must invoke that right in a timely manner to preserve it.

Here, given the dueling deposition testimony, a genuine issue of material fact remains as to whether Harmoosh asserted his right to arbitrate during proceedings in the Iraqi trial court. The Foundation's claims thus survive Harmoosh's motion for summary judgment.[2]

### III.

For the foregoing reasons, the judgment of the district court is

*VACATED AND REMANDED.*

---

[2] The district court also compelled arbitration on the Foundation's fraudulent conveyance claim based on its conclusion that Harmoosh did not default his right to arbitrate. Thus, we vacate the entire judgment of the district court, including its order compelling arbitration of the fraudulent conveyance claim.